### Richmond

## THOMAS P. HARKINS, INC., ET AL.

### V.

## REYNOLDS ASSOCIATES, ET AL.

April 24, 1981.

Record No. 790435.

Present: All the Justices.

Randolph W. Church, Jr. (*Grady K. Carlson; McCandlish, Lillard, Church & Best*, on briefs), for appellants.
*Terrence Ney* (*Haynie S. Trotter; Robert W. Wooldridge, Jr.; Louis Pohoryles* [D.C.]; *Boothe, Prichard & Dudley; Pohoryles, Goldberg, Staton & Harris* [D.C.], on brief), for appellees.

THOMPSON, J., delivered the opinion of the Court.

Reynolds Associates (Reynolds) is a limited partnership doing business in Virginia. On January 23, 1973, Reynolds entered into an agreement with Bucher-Meyers & Associates, Inc. (Bucher-Meyers), a Maryland corporation, whereby Bucher-Meyers agreed to provide architectural, engineering and consultant services for the construction of a 209-unit high-rise apartment project known as Cameron Overlook. On March 29, 1973, Reynolds entered into a contract with Thomas P. Harkins, Inc. (Harkins) for the construction of the apartment project designed by Bucher-Meyers. At the same time Harkins executed a performance bond for the project in the penalty of $1,887,150 with Maryland Casualty Company (Maryland Casualty) as surety.

On June 10, 1977, Reynolds filed a motion for judgment alleging that Harkins had failed to construct the building in accordance with plans and specifications and that Bucher-Meyers had negligently designed the building and had failed to supervise properly the work done by Harkins. Reynolds sought joint and several damages in the amount of $1,150,000 against Bucher-Meyers, Harkins and Maryland Casualty as surety. On September 29, 1978, Reynolds filed an amended motion for judgment which increased the damage claim to $1,450,000.

The case was tried by a jury which rendered a verdict in favor of Bucher-Meyers, but against Harkins and Maryland Casualty in the amount of $281,092. The trial court entered judgment on the verdict, and we granted an appeal limited to the following assignment of error:

    1. The Court erred in permitting the witness Anthony Vallance to testify concerning damages in that:
        A. Vallance was not qualified to testify concerning costs

of construction and repair in Northern Virginia in October 1978;

B. Vallance was not qualified to testify concerning costs of construction and repair in Northern Virginia on June 12, 1975, and Vallance was improperly allowed to reduce his 1978 figures to 1975 figures.

## I. WAS VALLANCE PROPERLY QUALIFIED AS AN EXPERT WITNESS?

Anthony Vallance was questioned at length on direct and cross-examination regarding his qualifications to render an opinion on building repair costs for the project in question. His testimony revealed that Vallance was a "quantity surveyor"[1] and a certified member of the American Association of Cost Engineers, the latter requiring proof of expertise, education and experience in the profession of cost estimating before membership is extended. In the United States, Vallance had been involved in determining construction costs of an $81 million facility in Chicago known as the State of Illinois Center, a $14 million academic building at George Washington University in Washington, D. C., multi-family housing projects of the Federal Housing Program, and miscellaneous projects in Alexandria, on the Eastern Shore of Virginia, at the National Aeronautics and Space Administration in Virginia, and at Salisbury, Maryland. He was specifically asked by the court if he was familiar with building costs in the Alexandria area, and Vallance responded in the affirmative.

This court has consistently followed the rule set forth in *Swersky* v. *Higgins,* 194 Va. 983, 76 S.E.2d 200 (1953), which holds that a trial court should not be reversed for permitting a witness to testify as an expert *unless it clearly appears* that he was not qualified in the field in which he tendered his evidence. 194 Va. at 985, 76 S.E.2d at 202. *See also Whitworth* v. *State Highway Commissioner,* 209 Va. 95, 99-100, 161 S.E.2d 698, 702 (1968). From our reading of the testimony presented at trial it is readily apparent that Vallance possessed the necessary credentials and expertise required of a building repair estimator, and we will not disturb the ruling of the lower court.

Harkins argues that Vallance should not have been permitted to testify absent personal knowledge of building repair costs in the

---

[1] The term "quantity surveyor" is of British origin and, in its common usage, refers to a person with architectural and engineering expertise who is employed to supervise and control construction projects during both design and construction phases.

Alexandria area, the situs of the project in question. Vallance testified however, that he was familiar with building costs in the area. The trial court found he was knowledgeable on the matter. We will not disturb that finding, and accordingly, we reject Harkins' contention.

We therefore conclude that Vallance could properly testify as to the amount of repair costs he believed would be required to bring the project into full compliance with the building contract.

## II. WAS IT PROPER TO PERMIT THE WITNESS TO REVISE HIS FIGURES?

█ The trial court ruled that any damages that might be assessed should be computed with regard to the date that the building contract was substantially completed, June 12, 1975. Vallance was prepared to testify as to repair costs compiled in October of 1978 reflecting building costs that were prevailing at that time. In order to adjust his calculations to demonstrate repair costs in effect as of June 12, 1975, Vallance was permitted to withdraw from the courtroom and recompute his figures. In making these adjustments Vallance simply "discounted" all estimates by an average of nine percent per annum for the period June 12, 1975, to October, 1978. We must decide whether such a method of re-evaluation was proper under the circumstances.

While the costs of any specific commodity or service does not normally rise or fall at a uniform or constant rate, Vallance's integration of a flat nine percent "deflation factor" is not without merit. His use of that figure was an interpretation and assessment of *past* economic inflation in the building and construction business and not a projection of cost increases. We can find no evidence to support the theory that the use of a nine percent discount rate was unreasonable or that building costs did not otherwise rise at that level.

Vallance testified that this particular discounting procedure is widely used and has been utilized by him before. In *Kerr* v. *Clinchfield Coal Corp.,* 169 Va. 149, 156, 192 S.E. 741, 743 (1937), we said: "[T]he opinion may be based upon the value of the property at a previous, if not too remote, period." We have long been committed to the view that damages are not required to be proved with mathematical exactness.[2] The jury was so instructed in this case, that is,

---

[2] In *Washington Golf and Country Club, Inc.* v. *Briggs and Brennan Developers, Inc.,* 198 Va. 586, 592, 95 S.E.2d 233, 237 (1956), we said:
  Damages are not rendered uncertain because they cannot be calculated with absolute exactness or because the consequences of the wrong are not pre-

that an intelligent estimate or a reasonable basis of calculations is all that is required.[3] Vallance was subjected to vigorous cross-examination, and accordingly it was for the jury to give such weight and credibility to his testimony as they deemed justified. The method of recomputing the building repair costs estimates was therefore proper.

For the foregoing reasons we are of opinion that the trial court committed no error, and the judgment of the lower court will be

*Affirmed.*

cisely definite in pecuniary amount. Moreover, one whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by a plaintiff is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible. An element of uncertainty in the assessment of damages or the fact that they cannot be calculated with mathematical accuracy or with reasonable certainty or exactness is not a bar to their recovery. Nor is mere difficulty in the assessment of damages a sufficient reason for refusing them where the right to them has been established. [Citations omitted.]

[3] Instruction 26 granted by the court states: "The burden on the plaintiff to prove his damages by a preponderance of the evidence or with reasonable certainty does not require that he prove with mathematical precision the exact sum of his damage, but only that he furnish evidence of sufficient facts and circumstances to permit an intelligent and probable estimate thereof."