WILLIAM W. TALBOTT, ET AL.

V.

E. ST. CLAIR MILLER, ET AL.

Record No. 830937

November 26, 1986

Present: Carrico, C.J., Cochran, Poff, Compton, Russell, Thomas, JJ.,
and Harrison, Retired Justice

*Roscoe B. Stephenson, III (Fletcher D. Watson; Kostel, Watson, Snyder & Pasco*, on brief), for appellants.
*Eric Lee Sisler; James W. Osborne*, for appellees.

COCHRAN, J., delivered the opinion of the Court.

E. St. Clair Miller and Imogene Wiley Miller, his wife, brought this action for damages against William W. Talbott and others[1] alleging breach of a contract to construct and maintain a road. At trial, a jury returned a verdict in favor of plaintiffs against defendants jointly and severally in the amount of $86,940.

Defendants moved to set aside the verdict on several grounds. The trial court sustained the motion in part, ruling that the verdict was excessive because it awarded the cost of completing a

---

[1] The defendants were Valley Ridge East, Inc., William W. Talbott, Barbara Talbott, Marshall D. Talbott, Marion O. Talbott, Joe B. Roles, Sue C. Roles, James H. Roles, Dorothy S. Roles, W. B. Overstreet (sometimes referred to as W. B. Overstreet, Jr.), Juanita D. Overstreet, David R. Stinson, Jr., Ruth W. Stinson, Louis E. Longanacre, Vivian C. Longanacre, Earl B. Montgomery, and June Montgomery.

section of the road for which defendants were not responsible. Plaintiffs agreed to accept a remittitur of $11,302.20. In all other respects, the court overruled the motion to set aside the verdict. By final order entered March 11, 1983, judgment was awarded plaintiffs as of October 8, 1982, in the amount of $75,637.80, plus costs. On appeal, defendants challenge the admissibility of certain evidence, the refusal of certain instructions tendered by defendants, and the measure of damages fixed by the jury.

On July 15, 1965, Miller and William W. Talbott entered into a contract whereby Miller agreed to convey to Talbott 153 acres[2] of land in Alleghany County adjacent to a tract already owned by Talbott. As part of the consideration for the purchase, Talbott agreed to certain obligations regarding a roadway through the original Talbott tract and the 153-acre parcel being conveyed. By deed dated May 1, 1968, the parties completed the transaction, with Miller conveying the property to Talbott and his wife.

In this deed, in accordance with the prior agreement, the Talbotts conveyed to Miller a 40-foot right-of-way through a portion of the original Talbott tract leased to Alleghany Country Club and a 50-foot right-of-way through the remainder of the original Talbott property. Miller reserved a 50-foot right-of-way through the land conveyed to the Talbotts "along the location of existing roadways." Talbott agreed to construct a road along and over these rights-of-way "with proper drainage and grading, and with a base of creek gravel and shale." The parties agreed the rights-of-way would not be exclusive; each would have the right to convey rights-of-way to third parties or to dedicate the rights-of-way to the public for incorporation in the state highway system.

In another deed dated August 8, 1969, Miller and his wife conveyed to the individual defendants an additional 102 acres adjoining the 153-acre parcel previously conveyed. The parties expressly incorporated the right-of-way agreement contained in the earlier deed. The Millers reserved an additional right-of-way through this 102-acre parcel along an existing road to the home then owned by the Millers and from that home along an existing road or lane to the adjacent property, a smaller tract being retained by the Millers. The parties agreed that the Millers would also have the right to use and improve, at their own expense, an existing road leading

---

[2] This tract was later shown to contain only 120 acres, but throughout this opinion it will be referred to as "the 153-acre tract" in accordance with the deed description.

directly to their remaining property and known as the "Stage-coach Road."[3] Finally, the parties modified the provision of the earlier deed and contract requiring construction of the road. Because the road had not been built as of July 1, 1969, the parties agreed that the purchasers would pay the Millers $100 per month until the road was completed or until the purchasers gave the Millers a comparable right-of-way to the remaining Miller tract.

By later deeds, the William W. Talbotts conveyed their interests in the original Talbott tract, the 153-acre tract, and the 102-acre tract to the remaining individual defendants and Valley Ridge East, Inc., a corporation owned by these defendants. Each conveyance was made subject to the rights-of-way earlier provided for the Millers.

The defendants paid plaintiffs $100 monthly from 1969 through August 1979. In the spring of 1979, the Millers granted to Stephen A. Bennett a limited right-of-way across these tracts and the Miller property, to be used in connection with Bennett's logging business, and Bennett agreed to maintain the road during the 36-month term of this right-of-way agreement. Bennett graded the road and added a shale base, culverts, and ditches. After Bennett had improved the road in the summer of 1979, Valley Ridge East, Inc., notified Miller that the road met the requirements of the May 1, 1968, deed and, effective September 1, 1979, the $100 monthly payments would be terminated.

The Millers offered the testimony of James W. Sizemore to show that the road never complied with the contract specifications and to show the cost of completing the road in accordance with the contract. The defendants contend Sizemore was not qualified as an expert because he had no formal education or experience in road design.

The opinions Sizemore was asked to express dealt with the condition of the road and construction costs. An excavating contractor and owner of his own excavating business for over 25 years, Sizemore had done road contracting work in Alleghany County for "just about everyone," including the Department of Highways,

---

[3] It was this portion of the road, noted on a plat in evidence as point 8 to point 12, which the trial court ruled was not included in defendants' obligation to build the road. Plaintiffs' expert testified that building the road from point 8 to point 12 accounted for 12% to 14% of the cost of building the road under either of two cost estimates he had prepared. Because the verdict was in the exact amount of one of these estimates, the court placed plaintiffs on terms to accept a remittitur of 13%, which they agreed to do.

the forestry service, local industries, utility companies, and individuals such as defendant William W. Talbott. He was familiar with the road and had been paid by Miller and Bennett for its repair and maintenance.

■ The trial court did not abuse its discretion in allowing Sizemore to testify as an expert concerning issues related to road construction. *See Harkins* v. *Reynolds Associates*, 221 Va. 1128, 1130, 277 S.E.2d 222, 223 (1981). Because of his experience, Sizemore was qualified to express an opinion as to the meaning of the contract specifications and the costs of building a road in accordance with those specifications.

■ Defendants also challenge certain testimony of Miller concerning expenditures he had made to maintain the road between 1969 and the time of trial. Sizemore, however, earlier had testified, without objection, about certain payments Miller had made to him for maintenance of the road. Miller testified, over objection, that he had spent $20,000 to $40,000 maintaining the road, $10,000 to $20,000 of which he had paid to Sizemore. Although the trial judge agreed that this testimony was inadmissible to prove damages, he ruled that it was admissible to show the condition of the road, its history, and the intent of the parties. We agree. Miller testified that the payments of $100 per month were for road maintenance until a road complying with the agreed specifications was constructed. His testimony tended to show the maintenance requirements for the existing road and his expenditure of more than the $100 per month for maintenance.

■ Defendants contend the court erred in rejecting an instruction which they proffered on contract certainty and completeness. The court adequately instructed the jury on these issues in another instruction, however, and did not err in refusing defendants' instruction. *See Tuggle* v. *Commonwealth*, 228 Va. 493, 508, 323 S.E.2d 539, 548 (1984), *aff'd on remand*, 230 Va. 99, 334 S.E.2d 838 (1985); *Am. Realty* v. *Chase Manhattan*, 222 Va. 392, 407 -08, 281 S.E.2d 825, 833 (1981).

■ Defendants challenge the court's refusal to grant an instruction that would have limited recoverable damages to $100 per month, arguing the monthly payment provision established the amount of liquidated damages payable upon failure to build the road. We do not agree. As is commonly done in construction contracts, the parties provided for payment of liquidated damages for delay in completing the promised performance. *See Pope* v. *Guard*

*Rail*, 219 Va. 111, 113, 244 S.E.2d 774, 776 (1978); *see also* Annot., 12 A.L.R. 4th 891 (1982). The $100 payments were clearly intended to compensate Miller for maintenance and inconvenience until the road was completed, not in the event it was not. The original agreement demonstrates that Miller's purpose was to have the road built. His later agreement to accept the monthly payment was an interim measure only. The liquidated damages clause required immediate monthly payments by the defendants for delay though the defendants were not yet in breach of the obligation to build the road; it did not fix the damages payable upon defendants' ultimate breach of the construction obligation.

■ Defendants say the court erred in refusing to instruct the jury that the original contract and deed were superseded and replaced by the 1969 deed. They apparently contend the final instrument was a contract for alternative performance and damages should have been measured by the alternative obligation to pay $100 per month. However, we construe the primary obligation of this contract to be the construction of the road. The $100 monthly payment was merely a provision for compensation to Miller for the expense and inconvenience caused by any delay in performance. It was not contemplated that such payments could be made forever in lieu of construction of the road. Damages were properly attributable to the breach of the primary obligation to build the road rather than to the interim obligation to pay $100 per month. Thus, any error in failing to give the instruction at issue was harmless.

Defendants also attack the verdict as excessive, saying the jury measured damages as of the date of trial rather than as of the date of breach. We agree. Plaintiffs' expert, Sizemore, testified as to the costs of constructing the road at the time of the trial. He offered two plans by which the road could be built to contract specifications, one costing $118,922.50 and the other $86,940. The jury returned a verdict in the exact amount of the cost of his second plan.

Citing *Mann v. Clowser*, 190 Va. 887, 59 S.E.2d 78 (1950), plaintiffs suggest that, where cost-of-completion damages are sought in a construction case, such costs are measured at current market prices so that the nonbreaching party can be placed in the position he would have occupied absent breach. We do not reach this issue in this case. The trial court granted, without objection,

an instruction tendered by defendants which informed the jury that damages should be determined as of the date of breach.

■ Plaintiffs further defend the judgment by arguing that the defendants' failure to pay the $100 monthly obligation was a continuing breach and therefore the date of breach was the date of trial when the jury determined that a breach had occurred. We do not agree. It is clear the breach occurred in September 1979 when defendants notified plaintiffs of their determination that the contractual obligation had been discharged and of their intent to cease the interim $100 monthly payments.

■ Finally, plaintiffs suggest that the verdict complied with the instruction to measure damages as of the date of breach and was supported by the evidence. Sizemore testified that construction costs had risen 10% to 15% each year between the breach in September 1979 and the trial in October 1982. Plaintiffs argue that the jury could have arrived at its verdict by reducing the cost of Sizemore's first plan, $118,922.50, by 30% (10% for each of the three intervening years), and adding $3,700 (representing 37 monthly payments of $100 each). This computation yields $86,945.75, only $5.75 over the amount of the verdict.

We do not believe this method was used by the jury in reaching its verdict. The verdict was for $86,940, the exact cost of Sizemore's second construction plan computed as of the date of trial. We believe, as the trial court found in its final order, that the jury adopted this 1982 cost figure and in so doing failed to follow the court's instruction to assess damages as of the date of breach. Accordingly, we will reverse the judgment of the trial court only insofar as it fixed the amount of damages and remand the case for a new trial limited to the question of damages.

*Affirmed in part;*
*reversed in part;*
*and remanded.*