## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Board of Directors
of the Port Royal
Condominium Unit
Owners' Association

v.

Crossland Savings F.S.B. et al.

Case No. (Chancery) 18453

By JUDGE ALFRED D. SWERSKY

August 3, 1990

I have Ms. Hileman's letter of July 23, 1990, concerning the production of documents listed on the Vaughn Index. I also have Mr. Masterman's response; however, I have no response from Mr. Palmer on behalf of Tolber, Smith, Fitzgerald and Stackhouse and Mr. Epperly.

If there is a continuing objection to production of the documents from these defendants, the objections

as well as the basis for the assertion of any privileges must be filed with the Court within two weeks.

August 3, 1990

Defendants Starinieri, Kelly and Garcia's Motion to Compel further answers to interrogatories will be granted as to Starinieri no. 2, and complainant shall supply each fiduciary duty alleged to have been breached and the source of any such duty.

The motion will be denied as to Garcia no.s 4 and 5. These interrogatories are unclear, and there is grave doubt that they will lead to relevant or otherwise discoverable evidence. Complainant's objections to these interrogatories will be sustained.

Likewise, defendants' Motion to Compel production of documents will be denied, as the response of complainant indicates a willingness to allow examination of the documents requested which are in its possession. Should such an examination lead to further requests for production, the Court will deal with complainant's objections, if any, at that time.

August 3, 1990

Defendant Plank's Motion to Compel further answers to interrogatories must be granted. In the face of the repeated denials of the Requests for Admissions, the answers to interrogatories 6 to 19 must be supplemented by supplying the facts inquired of not the mere conclusory statements that the present answers assert.

After more than two years of discovery, the complainant must certainly be aware of the facts it relies upon in support of its allegations regarding this defendant. If complainant is unable to supplement these answers factually, a response to that effect must be filed on its behalf.

August 9, 1990

From Mr. Palmer's correspondence, it appears as if he continues to object only to providing documents 91, 95, 100, 105 and 106 as privileged and 2, 3 and 4.

Even though number 99 is not referred to in his letter, I will assume he continues to object to its production.

Mr. Masterman continues to object to producing documents number 42 and 90.

Mr. Masterman's objections will be sustained. Document number 42, upon counsel's representation, appears to have been generated prior to the onset of the attorney-client relationship. Document number 90 appears to be a letter from defendant Crossland's present counsel to federal authorities regarding the "nature of legal representation" and is privileged. It should be noted that the date of this letter is subsequent to the date of filing this suit.

Mr. Palmer's objection to numbers 2, 3 and 4 will be sustained. Numbers 91 and 95 need not be produced as they appear to contain the impressions and observations of counsel. However, number 105 must be produced as it appears to deal directly with questions raised by complainant. Number 106 likewise must be produced; however, any mental impressions or observations of counsel may be redacted. Number 99 must be produced but redacting of any impressions or observations of counsel is permitted.

October 24, 1990

The Plea in Bar filed by defendants J. E. Robert Co., Inc., Special Sale Properties, Inc., J. E. Robert Co., Joseph E. Robert, Jr., and Carroll Jaskulski will be granted as to Count VIII(a) and (b) (fraud and constructive fraud); however, the pleas as to the remaining counts will be denied without prejudice to the rights of these defendants to raise the statute of limitations and laches as trial defenses.

The Court expressly finds that these defendants are not barred by the doctrine of collateral estoppel from raising these defenses because of alleged post-filing conduct.

At the trial, the Court will deal with the applicable statutes of limitations for Counts IV (Consumer Protection Act) and V (negligence *per se*).

The Demurrer of these defendants to Counts IV and V will be overruled as to these defendants for the reasons stated in the Court's letter of January 5, 1989.

November 19, 1990

I have discussed the matter of the U. S. District Court's protective order with Judge Bryan, and the defendant Plank will be ordered by this Court to return the documents to their sources upon their request. Any objections that the sources may have to their discovery by plaintiff will be taken up at a separate hearing.

Certain matters are under advisement pending the outcome of this ruling, including Mr. Plank's deposition, depositions taken in other litigation, certain documents (financial analyses), etc.

Please provide the Court a list of these items.

November 30, 1990

Complainant's Motion to Compel production of the Kelly [Keller] Zanger Co. documents must be denied in view of defendant Plank's assertion of the attorney work-product doctrine.

The other items contained in [the] letters of November 26 and 28, 1990, to the Court appear to have been dealt with in the main at the hearing on November 28th. Other items contained in those letters await a ruling by Judge Bryan on the protective order.

November 30, 1990

The defendants' Motion to Permit Discovery of witnesses employed by plaintiff's expert must be denied.

Crossland and Royal Strect Sales Corporation seek discovery from RESTL and Allen Wright, alleged to be experts not retained by plaintiff in anticipation of litigation. Plaintiff asserts that they were retained by the expert it intends to use at trial as consultants. Further, plaintiff argues that the information would be available to defendants through discovery of its expert and in the expert's report.

Defendant argues that since the discovery is sought from someone not retained by plaintiff, the "exceptional circumstances" required by Rule 4:1(b)(4)(B) are not applicable.

Such an argument defeats the purpose of the Rule. The discovery sought from someone retained by a party's expert to assist in the preparation of his report or testimony must be governed by this Rule.

After completion of the expert's deposition, defendants may, if they so desire, renew the motion upon a proper showing.

The question of deposition testimony regarding the discoverability of communications by counsel at Association meetings remains under advisement and will be decided shortly.

## December 19, 1990

This matter is before the Court on defendant Crossland's Motion to Compel Deposition Testimony. Crossland asserts that a deponent has failed to answer questions about discussions at certain meetings attended by unit owners, tenants, management personnel and prospective purchasers. The deponent has asserted the attorney-client privilege with respect to questions about statements made by counsel to the Board of Directors at these meetings. Apparently, these items have been redacted from the minutes of these meetings, and Crossland seeks to discover what counsel said at these meetings that are redacted or otherwise not recorded.

Crossland argues that the attorney-client privilege does not apply because of the nature of the forum; that is a meeting unregulated as to attendance, with persons in attendance who are not "clients."

Plaintiff asserts that these are privileged communications between the members of the unit owners association and the Board's counsel and, further, that such persons would come within a broad definition of "client."

The Motion to Compel must be denied.

The scope of the attorney-client privilege has long been in issue where the client is a corporation, unincorporated association, or other multi-party entity. Here the matter is even more unusual because Crossland seeks statements made by counsel to the "client," the reverse of the usual case where the statements sought were made to counsel.

Assuming arguendo that the attorney-client privilege protects statements made by counsel (neither party has addressed this aspect of the question), that privilege, as well as the attorney work-product exception to discovery, would protect the comments of counsel made under circumstances such as these.

The old "control group" test for a limitation on the assertion of the privilege has been rejected by the Supreme Court in *Upjohn Co. v. United States*, 449 U.S. 383 (1981); hence, the definition of "client" for assertion of the privilege would not be limited to the Board of Directors of the Condominium. In *Upjohn* the Court focused more on the purpose and intent involved in making the communications.[1] Here it is clear that the attorney's comments were intended to advise the clients and others with a direct interest in the litigation. There is no suggestion that counsel intended remarks to be made public or to be disseminated to the public at large or to anyone else without a substantial interest in the litigation.

The unusual request here for the attorney's comments can only implicate the attorney-client privilege and the work-product doctrine. What counsel reveals when statements and comments on the anticipated or pending litigation are made can only have its source in facts learned from clients or from counsel's investigation of the matter. As such, counsel's remarks are protected.

In addition, the Court finds that the remarks and advice of counsel, by necessity, implicate counsel's mental impressions, ideas, interpretation of the law, and suggestions on how to proceed. Such items are exempt from discovery.

Crossland argues that it and one other defendant in this case, J. E. Robert, were unit owners at the time of the attorney's communication, and Crossland, as such, if deemed to be a client, waives the privilege. Clearly, this waiver is insufficient under the circumstances presented here of a multi-party entity as client.

---

[1] Upjohn dealt with the more usual case of witness's statements gathered by corporate counsel; however, in view of this Court's assumption that the privilege applies to attorney's statements, the rationale is the same.

## March 1, 1991

In considering Mr. Palmer's proposed Order on the noticing of depositions of experts, I cannot find in my notes, nor in the law clerk notes, any requirement that it be done within ten days after the identification of the experts. However, I do feel that some time limit should be imposed rather than Mr. Brincefield's proposal for a reasonable time.

Hence, I have modified Mr. Palmer's proposed order to provide that the notices of the taking of the deposition of any experts previously identified be given within fifteen days of the date of entry of the order, which is March 1, 1991.

## March 12, 1991

The Court has before it a myriad of motions for partial summary judgment. For reasons that follow, the motions will be denied in part and granted in part.

Count I charges various defendants with a breach of their fiduciary duties to complainant. Various allegations are made as to the duties each defendant owed and violated. Complainant argues that this Count sounds in contract, and since the Condominium Act is incorporated into written purchase agreements, the statute of limitations is five years. Defendants argue that this Count sounds in tort and that the applicable period of limitation is one year or, in the alternative, three years as a term of a contract implied-in-law.

The breach of a statutory duty imposed to protect a specific class of persons from a specific risk is a tort. Here the statute states that a declarant or others in control during the period of declarant control "shall be subject to liability as fiduciaries of the unit owners for their action or omissions during the period of declarant control . . ." § 55-79.74(a). This wording clearly evinces a legislative intent to impose tort liability upon this specified group for the protection of condominium purchasers from the specific risks that occur during construction or renovation. It even imposes a higher duty than ordinary care. While there is no specific reference to these statutory duties nor is the entire condominium act incorporated

in the written sales contracts, their inclusion would not have changed the nature of the claim. The statute of limitations for a tort not otherwise specified in the Code is one year.

Since there is no dispute that the period of declarant control ended on May 15, 1985, and that is the latest possible date for the cause of action to have accrued and since suit was not filed until April 14, 1988, the motions of the defendants Crossland, RSSC, Starinieri, Garcia, Kelly, Plank, Jaskulski, Robert and the Robert Companies will be granted. The please of the statute of limitations of Fitzgerald, Epperly and the Tolbert, Smith law firm will likewise be granted because there is no dispute that their representation ceased more than one year prior to the filing of suit. This Count stands dismissed as to all defendants, and it is not necessary for the Curt to rule on the other grounds asserted in the motions.

Counts II and V allege violation of the Condominium Act and negligence *per se* in violating the Act. These Counts likewise sound in tort in spite of complainants' position that the written sales agreements incorporate the public offering statements, and hence, the action is for breach of the contract.

However, the motions of defendants must be denied. There is a factual dispute as to when these causes of an action accrued, and the record is insufficient for the Court to find those accrual dates.

The inclusion of the public offering statement in the written sales contract may be evidence that the alleged misrepresentations were made as of the date of the contracts. The evidence is far from clear as to these dates. The other issues raised are issues of fact that are in dispute as to defendant's status, proximate cause, and lack of negligence.

Count III charges a breach of the statutory warranties found in § 55-79.79. Such an action sounds in contract and because these warranties are expressly included in the written sales contracts (para. 17), the period of limitations would be five years. *Harbour Gate Owners' Assn., et al. v. Berg, et al.*, 232 Va. 98 (1986). RSSC and Crossland's other arguments are premised on facts in dispute which must be resolved at trial.

Defendant Plank's motion with respect to Count VII, the breach of contract claim, must be denied. The statute of limitations is five years from the date of the last written sales contract entered into by PRDC, and while Plank asserts he was no longer on the Board after August, 1984, there is no evidence from which the Court can find the date that this cause of action accrued.

The motions of Fitzgerald, Epperly and the Tolbert, Smith law firm as to Count VIII, the fraud Count, must be denied. I am mindful that this Count has been dismissed as to other defendants; however, a factual dispute does arise as to the nature of the continuing representation of complainant by these defendants and its effect on the discovery of the alleged fraud.

### April 11, 1991

The Court has on its own motion reconsidered its denial of complainant's Motion to Amend as it relates to the amount of damages claimed.

No prejudice results to any defendant by allowing the amendment to the total amount of damages claimed as requested in paragraph 3(E) of the Motion. The Court adheres to its prior ruling with respect to the other amendments sought in the Motion.

### April 15, 1991

After the filing of a stipulation of certain facts concerning the dates of the purchase contracts, counsel have agreed that the Court could rule on Counts II and V, alleging violations of the Condominium Act.

Since the Court has ruled that these Counts sound in tort, the statute of limitations would be one year after accrual of the cause of action. § 8.01-248. Based upon the stipulation, even if the purchase date of the last contrcts was the date the cause of action accrued, the one-year statute of limitations would have expired prior to the date suit was filed. Hence, Counts II and V must be dismissed.

June 5, 1991

This matter is before the Court after trial on the merits as to defendants' Crossland Savings FSB (Crossland), Royal Street Sales Corporation (RSSC), and William H. Plank. Plaintiff seeks to impose liability on these defendants for breach of contract and breach of statutory warranties contained in Code of Virginia § 55-79.79(b). For reasons that follow, judgment will be rendered in favor of Mr. Plank and against Crossland and RSSC.

Plaintiff sought to impose liability upon Plank as a statutory declarant or by piercing the corporate veil as to Port Royal Development Company (PRDC). The Court finds that plaintiff has failed to prove that Plank performed any act as an individual by which he could be construed as a statutory declarant. While the evidence does reflect a certain looseness with regard to observing the corporate form, PRDC was a duly organized corporation, and the Court finds that substantial corporate formalities were met. Thus, Plank's actions which plaintiff seeks to ascribe to him individually, appear to have been taken on behalf of PRDC. This is true in spite of the fact that there is a dispute, apparently ongoing, between the principals of that corporation as to the percentage of ownership. There is no evidence from which the Court could find that PRDC was a partnership.

Plaintiff further seeks to impose liability upon Plank by piercing the corporate veil of PRDC. There are two requirements in Virginia for piercing the corporate veil. The first is that the corporate entity must be the alter ego, alias, stooge or dummy of the individual sought to be charged personally. While there is a certain lack of corporate formality, there is no evidence that PRDC was to be the alter ego, stooge or dummy as to Plank. It does appear from the plaintiff's evidence that other principals in that corporation may well have been held personally liable. The second requirement is that the corporate entity be a device or sham used to disguise wrongs, obscure fraud or conceal crime. There is no evidence adduced by the plaintiff that Plank ever used the PRDC corporate form as such a device. *See, Cheatle v. Rudd's Swimming Pool Supply*, 234 Va. 207 (1987).

For these reasons, the Court will not pierce the corporate veil to impose liability upon Plank personally There appearing no other basis for Plank's liability, judgment will be rendered in his favor.

The situation, however, is different with respect to Crossland and RSSC. There is no doubt from the plaintiff's evidence that RSSC was a wholly-owned subsidiary of Crossland formed for the express purpose of taking title to the unsold condominium units and disposing of them. While there is nothing improper *per se* in the use of a subsidiary or a "service corporation" by a lender and while it may be that such action is required on their part, the use of such a subsidiary or service corporation must be proper. The use of RSSC by Crossland was not proper. Royal Street Sales Corporation had no life of its own. Its officers and directors were the officers, directors and employees of Crossland, some of whom did not even know they had been named as officers or directors of RSSC. Royal Street Sales Corporation maintained no bank accounts, no separate office, had no employees, had no assets other than bare legal title to the unsold condominium units. All actions taken with regard to this project were taken by Crossland directly. Perhaps most telling in this regard is the testimony of Mr. Fitzgerald that Crossland, in foreclosing, intended to take title to the units in the name of RSSC and to dispose of them applying whatever proceeds could be garnered to the loan and also sharing in any proceeds. Further, the evidence revealed that all funds derived from the sale of the units were transmitted to Crossland directly with no intervention by RSSC. The actions of Crossland far exceed the actions of a mortgagee-in-possession acting solely to protect its loans.

Therefore, it is clear that the first prong of the *Cheatle* test has been met. In order to pierce the corporate veil, it is not necessary for the Court to find that Crossland, its officers or directors, specifically intended to defraud anyone; however, *Cheatle* requires that the corporate form be used to disguise wrongs. Crossland knew full well of its statutory obligations imposed by Section 55-79.79(b). It set up no mechanism to deal with its statutory obligations, and the unit owner's association would have no recourse in the event there were breaches of these statutory warranties. While there was no specific intent

to defraud, the empty shell of RSSC, once all units had been sold, would not be a position to remedy any of the deficiencies in the building. Crossland made no provisions for this contingency thus resulting in prejudice to the unit owner's association. Under such circumstances, it does promote the interests of justice to pierce the corporate veil as to RSSC and hold Crossland liable for any violation of its statutory duties.

Plaintiff also has shown that the actions taken by Crossland fall within the definition of a Declarant under the Condominium Act.

With regard to damages, the Court finds that plaintiff has failed to prove by preponderance of the evidence its damages for repairs yet to be made. The testimony of Mr. Light, plaintiff's expert, does not afford the Court any basis at all for making a reasonable estimate of the costs of repairs for alleged structural defects which have not yet been repaired. The testimony of Mr. Light as to his "regression analysis" does not meet the test of *Harkins, Inc. v. Reynolds Associates*, 221 Va. 1128, 277 S.E.2d 222 (1981). Mr. Light prepared his estimate of the cost of repairs as of June, 1992, a date which the Court found to be irrelevant. While the parties have asserted that the Court ruled that damages should be measured from the date of the breach, no such ruling was made by this Court. However, I did rule that the 1992 measure of damages would be irrelevant. Thereafter, Mr. Light sought to "deflate" the total damage cost as of 1992 by use of some unidentified factors which he obtained from a national engineering report. Even had Mr. Light not described this method as being "inaccurate," the Court would have had serious problems with this method in that the various deflation factors were never revealed nor was his methodology to break down the cost of repairs of each specific item alleged to be a structural defect. Plaintiff simply asked the Court to apply the same unidentified factors to each structural defect for which it alleged the defendants were liable. This the Court is unable to do. While Mr. Light described this "regression analysis" method as being acceptable within his trade or profession, it does not afford the Court a sufficient basis to find the cost of repairs, whether at the date of breach or at some later time, with any reasonable accuracy. However, the situation is different

with regard to the damages which the plaintiff has proved by way of repairs that have been made.

The defects in the roof and the swimming pool constituted structural defects within the meaning of § 55-79.79(b) and such defects existed during the time that Crossland/RSSC was the declarant. As such Crossland and RSSC are liable for damages arising out of these defects. Therefore, Crossland's argument that it is liable only as a successor declarant and entitled to certain protection under Section 55-79.74:3 is without merit. The Court awards damages for the repairs to the roof and parapet in the amount of $450,968.00; for architects' fees incurred in the amount of $35,782.50; $5,975.00 for items of damages plaintiff showed it paid for repairs to certain units. No funds have been awarded to cover the rental costs incurred in moving certain tenants as these were too remote. Further, the sum of $117,921.00 will be awarded as the cost of repairing the swimming pool. Plaintiff did not carry its burden of proof on the issue of replacement of the swimming pool and the cost of repair as testified to by defendants' expert affords the Court a basis for this amount. Thus, plaintiff is entitled to judgment against the defendant Crossland Savings FSB and the Royal Street Sales Corporation in the amount of $610,646.50. Pre-judgment interest will be awarded at the legal rate from the date the roof repairs began.

Defendants have failed to carry their burden of proof on the issue of mitigation of damages. While there was some evidence of worsening of damage to the structure by failure of plaintiff to repair immediately, some evidence was introduced by plaintiff to show financial considerations were a factor in the delay. No showing was made by defendants that it was reasonable that repairs be made immediately upon discovery, nor has the Court been given any basis by which it could estimate the difference, if any, in the amount of damages that arose because of plaintiff's failure and the amount of damages for the original structural defect.

In view of the amount of time I have spent with this case and having arrived at what I believe to be a just result based on the evidence heard over thirteen days' of trial, further motions, briefs or memoranda are discouraged.