# D.C. MCCLAIN, INC., ET AL.

## V.

# ARLINGTON COUNTY, ET AL.

Record No. 940149

January 13, 1995

Present: All the Justices

*Thomas B. Newell (Charlie C.H. Lee; Susan L. Timoner; Watt, Tieder & Hoffar,* on briefs), for appellants.

*Joseph P. Dyer, Jr. (Carolyn E. Kane; Barbara S. Drake, County Attorney; Ara L. Tramblian; Deputy County Attorney; Siciliano, Ellis, Dyer & Boccarosse,* on brief), for appellee Arlington County.

*William J. Carter (Timothy R. Hughes; James F. Lee, Jr.; Carr, Goodson & Lee,* on brief), for appellees Wilbur Smith Associates, Inc.; Wilbur Smith Associates; Wilbur Smith Associates BTML Division; Byrd, Talamy, MacDonald & Lewis Consulting Engineers (Division of Wilbur Smith Associates).

JUSTICE HASSELL delivered the opinion of the Court.

## I.

This appeal involves numerous issues arising out of the breach of a construction contract.

## II.

D.C. McClain, Inc. (McClain) executed a contract with Arlington County to construct a bridge in Arlington known as the Loop Road Bridge. McClain filed its motion for judgment against the County and the Board of Supervisors of Arlington County (collectively the County). McClain alleged, among other things, that it incurred damages because the County wrongfully terminated the contract, and that the County's design of the bridge is purportedly defective.

The County filed a counterclaim, alleging that McClain breached the contract and certain express and implied warranties, and filed a third-party motion for judgment against McClain's performance and payment bonding company, the Fidelity & Deposit Company of Maryland (Fidelity). The County also filed a third-party motion for judgment against the designer of the bridge, Wilbur Smith Associates, Inc. and its related divisions (collectively Wilbur Smith). The County asserted contract, indemnification, and tort claims against Wilbur Smith.

A jury returned a verdict of $569,000 in favor of McClain on its claims of wrongful termination and damages attributed to the purported design errors. The jury also found in favor of McClain and Fidelity on the County's claims against them. The jury awarded a verdict of $250,000 in favor of the County on its third-party motion for judgment against Wilbur Smith.

The trial court granted the County's motion to set aside the verdicts and entered final judgment in favor of the County in the amount of $661,000. The court also set aside the verdict against Wilbur Smith. We awarded McClain and Fidelity an appeal.

## III.

Wilbur Smith designed the bridge and provided construction phase engineering services. The bridge was designed as a single-span, cast-in-place, post-tensioned bridge, to be situated upon abutments of an adjoining landowner, Westfield Realty, Inc. (Westfield).

A major portion of the bridge construction work involved a process described as "post-tensioning." This process required pre-stressing the poured concrete bridge by adding tension to the tendons. "As these tendons are pulled, the bridge rises and the weight of the bridge shifts to its ultimate load bearing point[s] on the abutment[s]. . . . The pulling of the tendons to add tension, and thereby camber the bridge to its ultimate shape and location, is a process called post-tensioning." Daniel Curtis McClain, McClain's president, and Dennis Pisarcik, Fidelity's assistant managing attorney, testified that McClain was required to provide the means and methods necessary for the post-tensioning of the bridge.

Mr. McClain visited the site where the bridge was to be constructed and reviewed the plans and specifications for construction before McClain submitted its bid to the County. Mr. McClain knew, before he submitted McClain's bid and signed the construction contract, that there was not sufficient space between the end of the bridge and the existing bridge abutments to locate the mechanical jacks, which are necessary for the post-tensioning process.

VSL Corporation submitted a bid to McClain to perform the post-tensioning of the bridge before McClain signed the County's contract, but the bid included an express qualification for the need of eight feet of clear space behind the bridge to perform the post-tensioning. VSL included this qualification in its bid because the County's contract documents did not show the existence of an easement to use Westfield's property. Henry J. Cronin, vice-president of VSL, specifically told Mr. McClain, before McClain submitted its bid to the County, that an easement to use Westfield's property was necessary for the post-tensioning process.

William G. Brakefield, an employee of Westfield, had informed Mr. McClain that Westfield would not give McClain the necessary easement. Even though Mr. McClain knew on February 15, 1988 that Westfield would not provide an easement, McClain executed the contract on March 16, 1988 to construct the bridge for $789,755.90. Mr. McClain testified that he did not put an exception in McClain's bid because he had "always been under the premise that you do not put exceptions on bids. or they will throw your bid out."

McClain was unable to post-tension the bridge without the easement because of the lack of sufficient space. Subsequently,

McClain's subcontractor, VSL, developed an alternative method for post-tensioning of the bridge by utilizing "blockouts." This method permitted post-tensioning by creating holes, or blockouts, within the bridge. Mechanical devices would utilize the space created by the "blockouts" to post-tension the bridge. McClain was unable to complete the bridge by using this method because the temporary shoring, which was used to support the bridge before post-tensioning, was not capable of supporting the bridge's weight.

McClain encountered other problems during its attempt to construct the bridge that resulted in work stoppages. Ultimately, McClain and the County executed Change Order No. 4. This change order required the County to pay McClain an additional $365,000 in return for McClain's agreement to complete the bridge by July 1, 1990. The change order provided that the additional payment would constitute "full compensation" to complete all remaining work on the bridge, including minor revisions.

A few months after Mr. McClain had signed Change Order No. 4, McClain informed the County that McClain would not complete construction of the bridge unless the County agreed to pay an additional $180,000 and provide an easement for post-tensioning. The County refused to acquiesce in these demands and, subsequently, on June 15, 1990, the County sent McClain notice of the County's intent to terminate the contract. The County terminated the contract on July 20, 1990.

### IV.

Familiar principles of contract interpretation are pertinent to our resolution of this appeal. We must enforce the contract between McClain and the County as written, and the contract becomes the law of the case unless the contract is repugnant to some rule of law or public policy. *Winn* v. *Aleda Const. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 194 (1984); *Mercer* v. *S. Atlantic Ins. Co.*, 111 Va. 699, 704, 69 S.E. 961, 962 (1911). It is well-established that when a contract is clear and unambiguous, it is the duty of the court, and not the jury, to decide the meaning of the contract. *Winn*, 227 Va. at 307, 315 S.E.2d at 194; *Russell Co.* v. *Carroll*, 194 Va. 699, 703, 74 S.E.2d 685, 688 (1953); *Krikorian* v. *Dailey*, 171 Va. 16, 24, 197 S.E. 442, 446 (1938). Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there

is a presumption that the parties have not used words needlessly. *Winn,* 227 Va. at 307, 315 S.E.2d at 195; *Ames* v. *American Nat. Bank,* 163 Va. 1, 39, 176 S.E. 204, 216-17 (1934).

## V.

## A.

In Count VI of its motion for judgment, McClain asserted that the bridge "as designed, including the post-tensioning system, could not be commercially constructed without obtaining an easement from Westfield Realty Company to cut into the abutment wall to place the post-tensioning equipment and thereby allow the anchors for the tendons to be located on a proper bearing point." McClain further asserted that the County was "obligated pursuant to the terms of the Contract to obtain the easements which were necessary for construction" and the County failed to provide the necessary easement. McClain and Fidelity argue that they presented sufficient evidence at trial in support of these allegations.

The County and Wilbur Smith assert that McClain admitted that the bridge could be constructed from the designs and specifications, but McClain was unable to do so because it did not have an easement. The County and Wilbur Smith contend that the contract required that McClain, not the County, acquire the necessary easement to execute the work. We agree with the County and Wilbur Smith.

Paragraphs C(8) and C(9) of the general conditions, which are a portion of the construction contract at issue here, state:

8. *LANDS BY OWNER*

*The Owner shall provide the lands shown on the Drawings upon which the work under the Contract is to be performed and to be used for rights of way and for access.* In case all of the lands, rights-of-way or easements have not been obtained as herein contemplated before construction begins, the Contractor shall begin his work on such lands and rights-of-way as the Owner may have previously acquired. If by reason of tardy acquisition of all of the lands, rights-of-way or easements, the Contractor is unduly delayed in his prosecution of the work, as determined by the Engineer, then the Contractor shall be enti-

tled to make claim and act as stipulated hereinafter for extension of time and other provisions of these Contract Documents.

9. *LANDS BY CONTRACTOR*

Should the Contractor require additional land for temporary construction facilities and for storage of materials and equipment *other than the areas available on the site or right-of-way, or as otherwise furnished by the Owner, he shall provide such other lands and access thereto entirely at his own expense and without liability to the Owner.* The Contractor shall not enter upon private property for any purpose without written permission.

(Emphasis added).

■ Applying the aforementioned principles of contract interpretation, we hold that the language contained in these paragraphs does not require the County to obtain the easement. Paragraph C(8) requires that the County provide the lands shown on the contract drawings. It is undisputed that the land McClain needed to use to post-tension the bridge is *not* shown on those drawings. Thus, McClain needed to acquire an easement from Westfield. Paragraph C(9) imposes the obligation upon McClain to obtain the necessary easement at its expense because the additional land McClain needed to perform the post-tensioning was not an area "available on the [construction] site or right-of-way."

### B.

As we mentioned earlier, VSL Corporation, McClain's subcontractor retained to undertake the post-tensioning of the bridge, sought to post-tension the bridge by utilizing the blockout method. VSL submitted a shop drawing to McClain that was in turn submitted to Wilbur Smith and the County. After Wilbur Smith reviewed the shop drawing, it affixed a stamp, containing the following language, to the drawing:

Review of this document is for conformance with the design concept of the project only. Contractor is responsible for confirming field dimensions, for information that pertains solely to the fabrication processes or to techniques of construction, and for coordination of the work of all trades. This review

does not relieve the contractor from complying with all requirements of the contract documents.

The County's Department of Public Works employees reviewed the drawing and affixed a stamp on the shop drawing which stated, "Accepted as noted" and was signed by a County employee.

McClain and Fidelity assert that McClain is entitled to recover damages for purported delay associated with post-tensioning because the County approved the shop drawing. The County and Wilbur Smith argue that the County's approval does not relieve McClain of its contractual obligation to build the bridge in compliance with the contract documents.

McClain and Fidelity fail to discuss in their brief paragraph B(6)(g) of the general conditions of the contract, which states in relevant part:

> The Engineer shall pass upon the shop drawings with reasonable promptness. Checking and/or approval of shop drawings will be general, for conformance with the design concept of the Project and compliance with the information given in the Contract Documents, and will not include quantities, detailed dimensions, nor adjustments of dimensions to actual field conditions. *Approval shall not be construed as permitting any departure from contract requirements . . . nor as relieving the Contractor of the responsibility for any error in details, dimensions or otherwise that may exist.*

(Emphasis added). The word "Engineer," as used in paragraph B(6)(g), means "the Director, Department of Public Works, Arlington County, or his authorized representatives."

■ Even though the County's director of public works, or his designee, was required to "pass upon" the shop drawings, the contract documents clearly state that McClain remained responsible for any errors that might exist in the shop drawings. The uncontroverted evidence at trial reveals that the shop drawing is defective because the bridge could not be post-tensioned as specified in the shop drawing. Applying the plain language in the contract, which as we have stated is the law of this case, we hold that the County's approval of the shop drawing does not relieve McClain of its contractual obligation to construct properly the bridge.

Thus, McClain may not recover any damages that it may have incurred because of the defective shop drawing.

## C.

McClain asserted in Count V of its motion for judgment that it discovered numerous design errors during the construction of the bridge. McClain alleged, and presented evidence at trial, that certain critical dimensions contained in the contract documents relating to the height and width of the bridge, and the depth of the bridge's structural members, were incorrect. McClain presented evidence at trial that it incurred certain expenses caused by these design deficiencies. Thus, McClain asserts that there is sufficient evidence to support this particular claim, and the trial court erred by setting aside the jury's verdict. The County and Wilbur Smith assert that McClain is not entitled to recover damages because it failed to verify the dimensions as required by the contract documents. We agree with the County and Wilbur Smith.

The contract states in relevant part:

*COORDINATION OF WORK AND MEASUREMENTS AND DIMENSIONS*

A. The Contractor shall carry out the Work in accordance with the Drawings and Specifications. *The measurements and dimensions shown on these drawings shall be verified at the site by the Contractor.* The Contractor shall be responsible for all dimensions and coordinated execution of the Work. The Contractor shall verify that bridge components will fit as specified, or notify the Engineer sufficiently in advance if components do not fit so that modifications can be made without holding up the work. The contractor shall verify all foundation plans, framing plans, and finished surfaces and shall coordinate the Work before proceeding. . . . Where there are discrepancies in the contract documents [the Contractor shall] notify the Engineer before proceeding with the Work.

Mr. McClain testified that McClain did not check the dimensions of the existing structures or measure those dimensions before beginning work on the bridge. McClain's project manager, John A.

Robertson, testified that McClain did not measure the elevations of the roads adjoining the bridge before commencing construction to ascertain if the roads corresponded with the planned bridge work.

■ Simply stated, even though the contract plainly required that McClain verify the measurements and dimensions shown in the drawings before commencing construction, McClain failed to do so. The evidence reveals that McClain did not discover any of the elevational discrepancies until after it had begun to execute the work. Had McClain complied with the contract, the County would have had an opportunity to make necessary changes before McClain commenced work on the bridge. Accordingly, we hold that the trial court did not err by setting aside the jury's verdict on this count.

### D.

McClain and Fidelity argue that the County breached the contract because purportedly the County wrongfully terminated the contract. McClain and Fidelity contend that at the time of termination, McClain was not in default of the contract; that McClain was entitled to substantial time extensions because of the post-tensioning design errors; and that McClain had not failed to comply with the applicable contractual deadlines. McClain says that it presented sufficient evidence at trial to support these allegations.

The County and Wilbur Smith assert, however, that as a matter of law the County was entitled to terminate the contract because McClain had failed to prosecute the work as required by the contract. We agree with the County and Wilbur Smith.

Although the completion date was extended in December 1989, by Change Order No. 4 to July 1, 1990, a few months later McClain refused to complete construction of the bridge unless the County agreed to pay an additional $180,000 and to provide an easement for post-tensioning. As required by the contract, the County wrote McClain on June 15, 1990, informing it that McClain was in default because it had failed to prosecute the work in accordance with the agreed schedule of completion and it was obvious that the bridge could not be constructed by July 1. This termination letter reminded McClain that it had 15 days to cure the default. Copies of the letter were forwarded to Fidelity. By letter dated July 20, 1990, the County terminated the contract because McClain failed to cure the default.

The construction contract contains the following language that is pertinent to this discussion:

## TIME FOR COMPLETION AND LIQUIDATED DAMAGES

a. It is hereby understood and mutually agreed by and between the Contractor and the Owner that the date of beginning, the rate of progress, and *the time for completion of the work to be done hereunder are essential conditions of the Contract. The Contractor agrees that the work shall be started promptly upon receipt of any communication authorizing the Contractor to proceed and shall be prosecuted regularly, diligently, and uninterruptedly* at a rate of progress that will ensure full completion thereof in the shortest length of time consistent with good workmanship.

b. It is further agreed that time is of the essence of each and every portion of this Contract and of the Specifications wherein a definite and certain length of time is fixed for the performance of any act whatsoever.

. . . .

c. It is further agreed that where an additional time is allowed for the performance of any act by the Contractor according to the new time limit fixed by such extension shall be of the essence of this Contract.

(Emphasis added).

The plain and unambiguous contractual language, including Change Order No. 4, required McClain to prosecute the work "regularly, diligently, and uninterruptedly" and to complete the bridge no later than July 1, 1990. McClain failed to complete the bridge because McClain believed that the County was required to provide the necessary easement, and Mr. McClain was of opinion that without the easement, the bridge could not be constructed in accord with the design.

■ As we have previously stated, the clear and unambiguous language in the contract required that McClain obtain the necessary easement to undertake the post-tensioning of the bridge. Furthermore, Mr. McClain admitted that "[t]he bridge is not

unbuildable. If you get an access through that backwall, it could be built. . . . If they didn't get an easement, the bridge became unbuildable. If they got the easement, the bridge is buildable." Therefore, applying the contractual language that the parties used, we hold that, as a matter of law, the County was justified in terminating the contract with McClain because it failed to construct the bridge in a diligent and timely manner as required by the contract.*

## VI.

### A.

McClain and Fidelity argue that the trial court erred in setting aside the jury's verdict for Fidelity on the County's third-party motion for judgment. McClain and Fidelity contend that Fidelity has no liability to pay under the terms of its performance bond unless: (i) McClain is in default and (ii) the County has performed all its obligations under the contract. McClain and Fidelity assert that they presented credible evidence that the County failed to prove these conditions.

■ We disagree. Our review of the extensive record in this case reveals that, as a matter of law, the County did not materially breach the contract and that McClain breached the contract by failing to construct the bridge. Contrary to McClain's assertions, its failure to construct the bridge cannot be attributed to the County's design. Rather, as Mr. McClain admitted, McClain was unable to build the bridge because McClain could not acquire the necessary easement.

■ As we have stated, "[w]here a surety's liability for the principal's obligation has been established, the surety is liable for the whole debt. . . . The surety's liability to the obligee is measured by that of the principal; the liability of both is primary." *Board of Sup.* v. *Southern Cross Coal*, 238 Va. 91, 96, 380 S.E.2d 636, 639 (1989). We hold that the liability of Fidelity is co-extensive with McClain's liability, and Fidelity is liable for the work

---

* McClain, relying upon *Spotsylvania County School Board* v. *Seaboard Surety Company*, 243 Va. 202, 415 S.E.2d 120 (1992), argues that whether an owner breaches its contract by terminating a contractor is a jury issue. McClain's reliance is misplaced because Mr. McClain admitted that had he been able to acquire the easement, McClain could have constructed the bridge. Here, unlike *Spotsylvania*, no jury issue exists.

McClain agreed to perform. *New Amst. Co. v. Moretrench Corp.*, 184 Va. 318, 326, 35 S.E.2d 74, 78 (1945).

## B.

McClain and Fidelity argue that the trial court erred in entering the $661,000 judgment in favor of the County. McClain and Fidelity argue that the County's evidence of damages upon which the trial court based the judgment is speculative. The County argues that the judgment is supported by the evidence.

■ We agree with the County. We have repeatedly held that a plaintiff in a contract action is not required to prove the exact amount of his damages, but rather, the plaintiff must show sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained. *Estate of Taylor* v. *Flair Property Associates*, 248 Va. 410, 414, 448 S.E.2d 413, 416 (1994); *Harkins* v. *Reynolds Associates*, 221 Va. 1128, 1131-32, 277 S.E.2d 222, 224 (1981).

Vance Allen Perry, Sr., qualified as the County's expert witness on the subjects of construction management, engineering, cost analysis, and shop drawing review. Perry testified that it would cost $979,924 to complete the bridge. This analysis was based upon several proposals that general contractors had submitted to the County to complete the construction of the bridge. Perry's analysis also included the costs of labor and materials as well as alternative methods of post-tensioning the bridge. He further testified that another contractor had executed a contract to complete the bridge for the County for $650,000. Upon our review of the evidence of record, we hold that there is sufficient evidence to support the trial court's award of damages.

## VII.

In view of the aforementioned holdings, we need not consider McClain's remaining assignments of error. Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*