COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


SHARON KAY FISHER

MEMORANDUM OPINION* BY
v.        Record No. 1608-05-4        JUDGE JAMES W. BENTON, JR.
                                              APRIL 11, 2006
JAMES RAY FISHER, JR.


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
J. Howe Brown, Jr., Judge Designate

Alexander Laufer (Eisenhower, Laufer & Tarby, P.C., on briefs), for
appellant.

(Paul A. Morrison; Howard, Morrison & Howard, on brief), for
appellee.  Appellee submitting on brief.


This appeal challenges the trial judge's rulings that the terms of a property settlement

agreement were unambiguous and that an award of attorney's fees was an appropriate sanction

under a rule to show cause.  We affirm the judgment.

I.

James Ray Fisher, Jr. and Sharon Kay Fisher were divorced by a final decree, which

incorporated their property settlement agreement.  In pertinent part, the agreement reserved for

the husband the right to purchase the parties' marital home for $245,000.  Upon completion of

the purchase, both parties would receive one-half of the proceeds of the sale after deducting the

real estate agent commissions, the costs of sale, and "all mortgages."  The agreement further

required the husband to pay the wife one half of the "proceeds of the sale of [the marital home]

over and above the original sale price to Husband of . . . $245,000" if the property "is later sold

---
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

and becomes part of a real estate development or commercial project." In that event, the following applied:

> [T]he proceeds of such sale, after payment of real estate agent commissions, the cost of sale and all mortgages, or other associated costs and any remaining proceeds shall be distributed in separate shares to Husband and Wife so that Wife's shares shall amount to half of the remaining net proceeds and Husband's shares shall amount to half of the remaining net proceeds.

The agreement provided that it "contains the entire understanding between the parties, and there are no representations, warranties, covenants or understandings other than those expressly set forth herein." The parties entered into the agreement "upon mature consideration and upon the advice of separate counsel," and they agreed to waive and release all other claims.

In accordance with the agreement, the husband purchased the marital home. After deducting the outstanding balance of the mortgage and the closing costs, the husband and the wife each received $62,322.90. Six years later, the husband sold the marital property to a real estate developer for $636,000 and incurred $29,664 in closing costs. When the wife learned of the sale, she demanded payment from the husband and later received a check from the husband in an amount she deemed insufficient. From the sale price, the husband had deducted $145 for taxes, $289,247 for a first mortgage, $25,247 for a second mortgage, $29,664 for closing costs, and $245,000 for equity previously paid to both parties. The husband then paid the wife half of the remaining proceeds, $23,348.50, plus interest.

The wife filed a motion for entry of judgment alleging that under the terms of the agreement the husband owed her $180,668, which she calculated by subtracting from the sale price ($636,000) the prior equity in the home ($245,000) and the closing costs ($29,664) and then dividing by two. She also filed a rule to show cause, alleging that the husband's conduct was in contempt for violating the divorce decree.

At the hearing in the trial court, neither party called any witnesses. They argued for their interpretation of the agreement and presented the trial judge with exhibits describing how they believed the money should be divided. During the argument, the wife's attorney indicated the wife had a witness, but did not call the witness to testify. Instead, the attorney "proffer[ed] her testimony simply to be that her understanding was . . . [the wife] expected to get half of anything above and beyond $245,000 if and when it was resold, and that when she looked over the Agreement that's what she understood it to mean." The wife's attorney also said that "if [the agreement is] ambiguous, my client will testify . . . her understanding was . . . [the husband] agrees to equally share with wife the proceeds of the sale . . . over and above the original sale [price]."

After hearing the arguments, the trial judge ruled that the language of the agreement was unambiguous. Applying his understanding of the plain meaning of the language, the trial judge found that the payment the husband tendered to the wife was consistent with the agreement and denied the wife's motion for judgment. The judge also dismissed the rule to show cause and ordered the husband to pay the wife $500 for attorney's fees she incurred in obtaining payment of the $25,562.62. The trial judge denied the wife's motion to reconsider. This appeal followed.

II.

The wife contends that the words, "and all mortgages," were surplusage in the agreement because its literal application would allow the husband to decrease the proceeds from the sale of the home by subtracting the then outstanding mortgages and thereby defeat the parties' intent to share the proceeds equally. She further contends that the language is ambiguous because it is unclear "whether 'all mortgages' was to be calculated at the time of the execution of the [agreement] or at the time of the second sale of the property."

General contract principles govern marital agreements.  Southerland v. Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995).  A fundamental principle is that judges have "the duty . . . to construe a contract as written."  Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

> "It is the function of the court to construe the contract made by the parties, not to make a contract for them.  The question for the court is what did the parties agree to as evidenced by their contract.  The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984) (quoting Magann Corp. v. Elec. Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962)).

Surplusage is defined as "[r]edundant words in a . . . legal instrument; language that does not add meaning."  Black's Law Dictionary 1484 (8th ed. 2004).  Under contract principles, we are required to give words "their usual, ordinary, and popular meaning," and we do not treat a "word or clause in the contract . . . as meaningless if a reasonable meaning can be given to it."  D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135-136, 452 S.E.2d 659, 662 (1995).  This is so because we "presum[e] that the parties have not used words needlessly."  Id.

The agreement provided that the proceeds of the sale were those funds remaining after payment of the various costs of the sale "and all mortgages."  The express language required that the outstanding balance of "all mortgages" be subtracted from the home's sale price when calculating the proceeds.  Nothing in the record indicates that the use of the term, "and all mortgages," in reference to the later sale to a developer was a mistake.  The words have a sensible meaning and provide a method of determining the net proceeds of a sale.  This phrase is not repugnant to the remainder of the agreement, and it does not tend to nullify any portion of the agreement.  Indeed, identical language was used earlier in the same paragraph instructing the

parties to subtract the then outstanding value of "all mortgages" from the 1997 value of the home. We hold, therefore, that the trial judge properly found that this language is not surplusage.

The wife further contends that the trial judge erred in finding that the agreement's language was unambiguous. Whether language in a contractual agreement is ambiguous is a question of law to be reviewed *de novo*. Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003). On appeal, we must look to the "'words of the contract within the four corners of the instrument itself.'" Virginia Elec. & Power Co. v. Northern Virginia Reg'l Park Auth., 270 Va. 309, 315, 618 S.E.2d 323, 326 (2005) (citation omitted). "'Where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties.'" Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) (quoting Globe Iron Constr. Co. v. First Nat'l Bank of Boston, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)). "Contracts are not rendered ambiguous merely because the parties or their attorneys disagree upon the meaning of the language employed to express the agreement." Doswell Ltd. P'ship v. Virginia Elec. & Power Co., 251 Va. 215, 222-23, 468 S.E.2d 84, 88 (1996). Likewise, "[e]ven though an agreement may have been drawn unartfully, the court must construe the language as written if its parts can be read together without conflict." Id. at 223, 468 S.E.2d at 88.

The language used in the parties' agreement is not ambiguous. Under the express terms of the agreement, the husband received the right to purchase the martial home for $245,000. The husband did so in 1997. According to the terms of the sale, both the husband and the wife were to receive one half of the proceeds after payments for real estate commissions, sale costs, and "all mortgages" were deducted. The parties received money so calculated. The agreement also

- 5 -

provided that if the husband later sold the property to a commercial buyer, the same calculation was to be used, after deducting $245,000, to determine the net proceeds to be distributed.

The agreement did not preclude the possibility that the husband could have acquired additional mortgages on the property. Were we now to conclude that the parties did not intend such mortgages to be deducted from a later sale, we would engage in much more than mere speculation. The words of the agreement require all mortgages to be subtracted from the sale. Therefore, any other result would be contrary to the agreement's express language.

We hold that the trial judge did not err in ruling that the agreement did not contain surplusage and that the agreement was unambiguous. Thus, the trial judge properly ruled that both husband and wife were entitled to $23,348.50 from the sale.

### III.

The wife also contends that the trial judge erred by failing to address the issues raised by her rule to show cause and by awarding attorney's fees without permitting her to offer evidence concerning the fees.

The record discloses that the trial judge addressed the contempt issue at the hearing. The trial judge ruled that the husband paid the money, with interest, to the wife after he received a letter demanding payment. When the trial judge declined to find that the husband was in contempt, the wife's attorney argued that the wife "should . . . get some attorney fees." The trial judge ordered the husband to pay the wife $500 for her attorney's fees as a remedy.

When the trial judge made these rulings at the hearing, the wife did not object. Later, the wife listed several objections on the order the judge entered. Notably, however, she did not include an objection that addressed these issues. The crux of the wife's motion to reconsider was that the wife wanted a rehearing because she had "come . . . for the trial from her home in South Carolina . . . hoping to testify and adduce other evidence in support of her pleading to enforce the

- 6 -

property settlement agreement and the rule to show cause." This motion merely sought to have a rehearing at which witness testimony could be produced on issues previously decided by the trial judge. It did not assert that the wife was denied the opportunity at trial to prove her attorney's fees or that the trial judge had failed to address the contempt issue.

The principle is long standing that "[t]he decision whether to grant or deny a rehearing is within the trial court's sound judicial discretion." Hughes v. Gentry, 18 Va. App. 318, 326, 443 S.E.2d 448, 453 (1994). See also Cunningham v. Williams, 178 Va. 542, 551-52, 17 S.E.2d 355, 358 (1941).

> After a court has concluded an evidentiary hearing "during which each party had ample opportunity to present evidence, it [is] within the court's discretion to refuse to take further evidence on this subject." In order to demonstrate an entitlement to a rehearing, a petitioner must show either an "error on the face of the record, or . . . some legal excuse for his failure to present his full defense at or before the time of entry of the decree." Although the trial judge's letter ruling did not specifically address the issue whether there was an error on the face of the record, its ruling implies a finding that there was no such error. We agree.

Holmes v. Holmes, 7 Va. App. 472, 480, 375 S.E.2d 387, 392 (1988) (citations omitted).

The record establishes that the trial judge addressed the contempt issue at the hearing. When the trial judge ruled at the hearing that an award of $500 attorney's fees was an appropriate sanction to be imposed for the husband's delay in paying the wife, the wife failed to timely object. We hold, therefore, that the trial judge did not abuse his discretion in denying the later request to reopen the proceeding to hear evidence on these issues.

For these reasons, we affirm the trial judge's order.

Affirmed.