COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia

UNPUBLISHED

APM SPINE & SPORTS PHYSICIANS

v.      Record No. 1235-21-1

CITY OF VIRGINIA BEACH

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
MAY 24, 2022

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Philip J. Geib (Philip J. Geib, P.C., on brief), for appellant.

Timothy D. Watson (Midkiff, Muncie & Ross, P.C., on brief), for appellee.

APM Spine and Sports Physicians (APM) appeals from a decision of the Workers' Compensation Commission applying a contractual fee limitation provision to bills for medical services that APM provided to an injured City of Virginia Beach employee. APM contends that it is entitled to underpaid bills because its bills do not exceed the prevailing community rate established by Code § 65.2-605(B). The City of Virginia Beach argues that APM is a party to a contract with its claim administrator, CorVel Corporation, that caps the amount of compensation at 80% of the billed rate. APM concedes that an authentic contract exists but argues that it does not apply to the services rendered in this case.

BACKGROUND

The Commission's findings of fact are "'conclusive and binding on appeal' . . . provided there is credible evidence to support those findings." *City of Charlottesville v. Sclafani*, 300 Va. 212, 222-23 (2021) (citations omitted). Additionally, this Court views the evidence in the light

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

most favorable to the prevailing party below, the City of Virginia Beach. *Id.* at 223 (quoting *Jeffreys v. Uninsured Emp'r's Fund*, 297 Va. 82, 87 (2019)).

In October 2012, claimant Todd Recupero suffered a compensable workplace injury while working for the City of Virginia Beach.[1]  In February 2013, the Commission notified the parties that CorVel Corporation took over the claim processing on behalf of Virginia Beach.  In November 2014, the Virginia Workers' Compensation Commission entered a lifetime medical award pursuant to an award agreement between Virginia Beach and Mr. Recupero.

Prior to the beginning of the medical treatment at issue in this matter, Dr. Robert Spear, in his capacity as president of APM, entered into a contract with CorVel, the City of Virginia Beach's workers' compensation claim administrator.  The contract is titled "Provider's Preferred Provider Organization Agreement" and is effective February 15, 2013, about two months before APM began providing medical services to Mr. Recupero.  At the hearing before the deputy commissioner, APM stipulated to the authenticity of the agreement.  Additionally, APM stipulated that Dr. Spear entered into the contract on behalf of APM.

The first page of the contract lists the parties as CorVel Healthcare Corporation and "APM Spine and Sports Physicians, an individual, corporation, partnership or other legal entity, on behalf of itself, the persons and entities referenced in Section 3.15 and Exhibit B and any other entity controlled by it that provides Covered Services to Covered Persons (collectively 'Provider')."  Core to this dispute, however, is Section 3.15 of the agreement found on page six of the contract.  Section 3.15, located under the part three of the contract titled "Obligations of Provider," reads as follows:

> 3.15 <u>Corporations or Partnerships.</u>  If Provider enters into this
> Agreement as a corporation, partnership, or other form of legal

---

[1] The nature and compensability of Mr. Recupero's injuries are not relevant to this appeal.

entity, all shareholders, partners, affiliated practitioners, and/or employees of such entity are listed in Exhibit B attached hereto, shall provide Covered Services to Covered Persons and shall be bound and shall abide by the provisions of this Agreement. Provider shall notify CorVel in writing within five (5) working days of any change to the information contained in Exhibit B.[2]

Exhibit B was attached to the contract, but APM never completed the form and Exhibit B was left blank.

The contract caps the amount of compensation due to APM for "Contracted Services." Under Part 5 of the contract, "Provider Reimbursement," the "Provider shall accept as payment in full the . . . applicable amount set forth in Exhibit C, attached to this agreement and incorporated by this reference." Exhibit C limits bills for medical services rendered by APM to workers' compensation patients to the lesser of 80% of billed charges, 90% of usual, customary, and reasonable prevailing rates, and 95% of the "current applicable federal or state mandated Workers Compensation fee schedule."

The medical services provided by APM began on April 30, 2013, and concluded on October 26, 2017. During this time, various physicians and nurse practitioners provided medical services to Mr. Recupero, including Dr. Spear. On March 10, 2020, APM filed a claim with the Commission alleging that the City of Virginia Beach was liable to it for the "reasonable, necessary and proximately related bill charges" that were allegedly unpaid or underpaid in the amount of $8,156.12. The account summary for all of the bills submitted by APM on Mr. Recupero's account show that CorVel applied "contractual adjustments" to the amount billed by APM. Subsequently, the amount in controversy was amended to reflect the correct

---

[2] We note that there appears to be a scrivener's error in Section 3.15. As written, the clause starting "shall provide Covered Services . . ." is a sentence fragment as there is no subject. As explained in more detail below, because we find that Section 3.15 and Exhibit B are not dispositive of the issue in this case, the error has no impact on our analysis.

calculation of all payments made by CorVel: of the $27,346 charged by APM, CorVel paid $21,879.22, leaving $5,527.40 unaccounted for. This number is not disputed.

A deputy commissioner held an evidentiary hearing on the matter and held that the contract only applied to services provided by Dr. Spear and ordered Virginia Beach to pay APM in the amount of $2,748.80, the full amount of the bills for services provided by the other physicians at APM. Virginia Beach sought review of that decision by the Commission. The Commission reviewed the matter on the record and reversed the findings of the deputy commissioner, finding that the contract applied to all medical services provided by APM. This appeal followed.

STANDARD OF REVIEW

While this Court is bound by the Commission's findings of fact, the "interpretation of a contract presents a question of law subject to *de novo* review." *Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 490 (2013).

ANALYSIS

For medical treatment rendered prior to the start of statutory fee schedules in 2018, a medical provider's bills to a workers' compensation claimant are *prima facie* evidence that the billed charges are reasonable. *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 703-04 (2012). Once the bills have been submitted, the burden shifts to the defendants to prove under Code § 65.2-605(B) that the charges exceed the prevailing community rate or that the charges are controlled by "a contract providing otherwise." *Id.* at 702.

APM contends that because it did not complete Exhibit B of the contract, any service rendered by APM or its physicians does not come within the scope of the contract and therefore the City of Virginia Beach is liable for the full amount of APM's billed charges. The City of Virginia Beach contends that all services provided by APM were subject to the contractual

- 4 -

limitation found in the agreement. The plain text of the contract unambiguously supports the City of Virginia Beach's position.

Basic contract interpretation principles dictate that "[w]hen the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Envtl. Staffing Acquisition Corp. v. B & R Constr. Mgmt.*, 283 Va. 787, 793 (2012) (quoting *PMA Capital Ins. Co. v. U.S. Airways, Inc.*, 271 Va. 352, 358 (2006)). Likewise, the "[w]ords that the parties used are normally given their usual, ordinary, and popular meaning," and "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 392 (2012) (quoting *D.C. McClain, Inc. v. Arlington Cnty.*, 249 Va. 131, 135-36 (1995)).

We turn first to the scope of the fee limitation provision of the contract. Section 5.1 limits "the Provider's bill(s) for Contracted Services" to the amount found in Exhibit C (80% in this case). Accordingly, to determine if the services rendered are covered by the fee limitation, we must determine who is the "Provider" contemplated by the provision and then determine whether the "Provider" billed for "Contracted Services."

The first paragraph of the contract provides a definition of the term "Provider": "APM Spine and Sports Physicians, an individual, corporation, partnership or other legal entity, on behalf of itself, the persons and entities referenced in Section 3.15 and Exhibit B and any other entity controlled by it that provides Covered Services to Covered Persons (collectively 'Provider')." Therefore, the term "Provider," at a minimum, refers to APM as an entity.

We must next determine whether APM (the "Provider") provided "Contracted Services" subject to the fee limitation in Exhibit C. "Contracted Services" are defined as "Covered Services which [APM] is licensed to provide and which [APM] will provide to Covered Persons

in accordance with this agreement." Therefore, to define "Contracted Services" we must turn to the definition for "Covered Services" and "Covered Persons." A "Covered Person" is an "individual who is eligible for Covered Services under a Medical Plan," and a "Medical Plan" includes workers' compensation under the terms of the contract. APM does not argue that Mr. Recupero is not a "Covered Person" under a "Medical Plan."

"Covered Services" are defined as "health care services including, but not limited to, hospital, physician and other health care practitioner services, medications and supplies rendered to Covered Persons by a Participating Provider for which reimbursement is required by a Medical Plan." Accordingly, a service is a "Covered Service" if it meets four elements. First, it is a "health care service." Second, it is rendered to "a Covered Person." Third, it is rendered by a "Participating Provider." Fourth, reimbursement for the service is required by a "Medical Plan." APM does not contend that the services rendered to Mr. Recupero were not "health care services"; thus, the first element is met. Also, as noted, it is not disputed that Mr. Recupero is a "Covered Person" and that reimbursement for services rendered is required by the workers' compensation award, so the second and fourth elements are met. To determine whether the third element (rendered by a "Participating Provider") is met we must go deeper into the contract to define "Participating Provider."

A "Participating Provider" is a "Health Care Provider that has contracted with CorVel either directly or indirectly through an affiliate network to provide Covered Services under a Medical Plan to eligible Covered Persons under an alternative method of fee reimbursement." A "Health Care Provider is a . . . provider of Covered Services including but not limited to physicians . . . or other health care or health care services/supplies providers, in those states where such Health Care Provider provides health care services, and any of its principals, shareholders, agents or employees."

The definition of Participating Provider also has multiple elements: first, they must be a "Health Care Provider"; second, the provider has to have contracted with CorVel to provide "Covered Services" under a "Medical Plan." As to the first element, the contract defines "Health Care Provider" broadly as any health care provider of "Covered Services" (i.e. health care services rendered to Covered Persons under Medical Plans) and any shareholders, agents, or employees of that provider. APM plainly fits the definition of a "Health Care Provider." Turning to the second element, APM has directly contracted with CorVel to provide "Covered Services." APM therefore matches the definition of a "Participating Provider."

Putting the jigsaw pieces together leads to one inescapable conclusion. The plain language of the contract means that any health care service APM provided to Mr. Recupero that was covered by the workers' compensation award is a "Contracted Service" subject to the fee limitation contained in Exhibit C. All the bills at issue in this case are derived from health care services provided to Mr. Recupero and accordingly fall within the scope of the fee limitation provision. As such, CorVel and the City of Virginia Beach were entitled to adjust the total amount paid for each bill in accordance with the contract.

APM makes several arguments to suggest that this plain reading is incorrect, none of which are persuasive. First, APM argues that the first paragraph of the contract determines who may be "captivated [sic] to the terms of and conditions of the contract." APM points out that the first paragraph "referred to those persons or entities referenced in Section 3.15 of the contract and further those 'persons and entities' specifically identified in Exhibit B, incorporated into the contract." Because Exhibit B is blank, APM argues, no one is bound by the fee provision. This selective reading of the opening paragraph is wrong. The opening paragraph does not refer *only* to "those persons referenced in Section 3.15." Indeed, the opening paragraph defines three groups of entities collectively as a "Provider" bound by the contract: APM (on behalf of itself),

"the persons and entities referenced in Section 3.15 and Exhibit B," *and* "any other entity controlled by [APM]." Accordingly, Exhibit B is simply one of several sources to determine who is a "Provider" within the meaning of Section 5.1 and Exhibit C.

Relatedly, the language of Section 3.15 does not, as APM argues, override this general definition of "Provider." APM argues that Section 3.15 "specifically states that *only* those shareholders, partners, affiliated practitioners and/or employees of such entity that are listed in Exhibit B are those who can provide Covered Services." (Emphasis added). As with the opening paragraph, APM's recitation of Section 3.15 adds a crucial word to the actual contractual language: "only." Section 3.15 plainly does not say what APM contends it says.

Nonetheless, APM invokes the canon against surplusage to argue that Section 3.15 must have some impact on the contract. It is true that no "word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *D.C. McClain*, 249 Va. at 135-36. APM argues that the Commission's reading of the contract ignores Exhibit B and gives it no meaning. This is incorrect. APM reads Exhibit B as a necessary part of this contract, but as noted above, Exhibit B is simply an additional source of participating providers; in other words, it is simply not a necessary condition for the enforcement of the contract in this particular case. The Commission's reading does not render Section 3.15 meaningless in the abstract.

APM also argues that several physicians who were not named in the contract provided services to Mr. Recupero and therefore the contract does not apply to the bills for those services. This argument fails on two fronts. First, the contract plainly contemplates that the services provided under the contract would be performed by other people. The contract clearly includes "any other entity controlled by [APM]" in its definition of "Provider." Additionally, as detailed above, the fee limitation applies broadly to health care services provided by APM *and* those

services provided by "any of [APM's] principals, shareholders, agents or employees." The individual physicians who provided the actual services for which APM seeks to be compensated are, at the very least, agents of APM and are covered by the contract.

Second, and more fundamentally, the argument that it was not APM who provided the health care services raises the question of what services did *APM* provide that entitle it to compensation? APM filed a claim with the Workers' Compensation Commission claiming that *it* was entitled to compensation for reasonable medical bills (that were submitted with APM's name on them). Now APM argues that it did not provide any health care services, but that the services were simply provided by individual health care practitioners. APM cannot have it both ways. Either it provided medical services and it is entitled to compensation subject to the contractual limitation or it did not provide medical services and it is not entitled to any compensation under the workers' compensation award.

Finally, APM argues that because Dr. Spear was the only physician to sign the contract, APM as an entity cannot be bound by the contract. The contract clearly reflects that Dr. Spear signed the contract in his representative capacity as "President" of APM. APM was a named party to the contract, and APM stipulated at the evidentiary hearing that Dr. Spear signed the contract on behalf of APM. Additionally, in its brief, APM admits that "Dr. Robert Spear, the medical provider's President, entered into the contract on behalf of the medical provider." As a result, APM is bound by the actions of its president.

CONCLUSION

Because the plain language of the contract indicates that the parties intended the fee limitation provision to apply to all medical services provided by APM, we find no error in the Commission's ruling. Accordingly, we affirm.

*Affirmed.*

- 9 -