# Staunton

## ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, LIMITED v. J. D. BAUM.

September 22, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Page, Page & Page,* for the plaintiff in error.

*Earl W. White* and *Ferebee & White,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

J. D. Baum, in an action against Louis and Frank Corleto, recovered judgment in the sum of $4,000 for injuries sustained in an automobile accident. Execution was issued on the judgment and returned marked "no effects." He thereupon instituted this action for the amount of the judgment and costs, alleging that he was entitled to recover under the omnibus clause of an insurance policy issued by Zurich General Accident and Liability Insurance Company to Louis Corleto. This writ of error brings under review the proceedings in the trial court which resulted in a verdict and judgment against the insurance company.

The first error assigned is to the action of the court in overruling the defendant's demurrer to the amended notice of motion.

The notice of motion alleged that the policy was issued to one I. N. Rubin on a Ford sedan, 1928 model, engine No. R-605929; that this automobile was later sold to Louis Corleto and in May, 1929, the policy was duly assigned to him; that Louis Corleto had disposed of this car and purchased another. Concerning the latter transaction the notice alleged that, "On the 2nd day of August, 1929, by agreement between you and the said Louis Corleto, the original

contract of insurance, represented by the policy hereto attached, was varied, altered, and modified in respect to the automobile covered thereunder, by the terms of which alteration and modification a certain automobile, described as a Ford sedan, model 1929, engine number A-20211496, was substituted for the automobile formerly insured, which said substituted automobile thereupon became, and was so recognized by you, as the automobile insured by you, all the other features of the original contract of insurance remaining unchanged."

The injury was inflicted on August 12, 1929, while the last-named car was being driven by Frank Corleto, acting as agent for his brother, Louis Corleto. The ground of demurrer was that the car involved in the accident which resulted in injury to plaintiff was not the car described in the policy, and that the only method by which coverage of one car can be substituted for another is by complying with the provisions of the policy contained in paragraph K, as follows:

"No change in the agreements, general conditions, special conditions or warranties of this policy, either printed or written, shall be valid unless made by endorsement signed by the manager and attorney or an assistant manager for the United States, nor shall notice to or knowledge possessed by any agent or any other person be held to waive, alter or extend any of such agreements, general conditions, special conditions or warranties."

The question thus presented is, where it is stipulated in a contract that changes or modifications must be made in only one way, can the parties by mutual agreement change or modify the contract in any other way?

The insurance contract introduced in evidence is not under seal. Under common law principles, the provisions of a simple contract in writing, by subsequent parol agreement of the parties before breach, may be waived, rescinded, added to, changed or modified. *Piedmont Mt. Airy Guano Co.* v. *Buchanan,* 146 Va. 617, 626, 131 S. E. 793; *Warren*

v. *Goodrich Strip & Screen Co.,* 133 Va. 366, 112 S. E. 687; *Moore* v. *Williamson,* 213 Ala. 274, 104 So. 645, 42 A. L. R. 981, and note; 13 Corpus Juris, section 609, page 593; 6 R. C. L. sections 298-9, pages 914-15; *Teal* v. *Bilby,* 123 U. S. 572, 8 S. Ct. 239, 31 L. Ed. 263; *Utley* v. *Donaldson,* 94 U. S. 29, 24 L. Ed. 54; *Swain* v. *Seamens,* 9 Wall. 254, 19 L. Ed. 554. This rule seems to be generally recognized in both the State and Federal courts. The rule is applied notwithstanding the fact that the parties have stipulated in the contract that it can be changed or modified in only one specific way. Williston on Contracts, volume 3, section 1828, states the rule thus:

■ "A contract in writing, but not required to be so by the statute of frauds, may be dissolved or varied by a new oral contract, which may or may not adopt as part of its terms some or all of the provisions of the original written contract. * * * Nor does it make any difference that the original written contract provided that it should not be substantially varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by a sufficient consideration is by necessary implication a rescission to that extent." See 6 R. C. L. sections 298-9, pages 914-15; *Simpson* v. *Mann,* 71 W. Va. 516, 76 S. E. 895, 48 L. R. A. (N. S.) 579; 13 Corpus Juris, section 611, page 594; *Piedmont* v. *Buchanan, supra.*

■ In the absence of statutory requirement, there is no reason why the courts should not apply these principles to the construction of insurance contracts, as well as others, and the authorities so hold. See Cyclopedia of Insurance Laws, Couch, section 1385; *American Eagle Fire Insurance Co. of N. Y.* v. *McKinnon,* 36 Ariz. 409, 286 Pac. 183; 32 Corpus Juris, section 257, page 1147; Wigmore on Evidence, paragraph 2441.

■ While the majority of the courts recognize the fact that these principles apply to insurance contracts, the difficulty in applying them usually arises because the agent

with whom the policyholder has dealt is not clothed with authority to bind the company. The notice of motion alleged that the agreement to substitute one car for another in the insurance contract was made with the company, and hence there was no error in overruling the demurrer.

In support of this allegation, the plaintiff introduced evidence showing that Louis Corleto called the office of W. M. Bott & Company, the agent of defendant, by telephone and informed the person who answered the telephone of the fact that he had disposed of the car covered by the policy and had purchased a new car, and requested that the policy be changed accordingly. No written endorsement was made on the policy changing the coverage from the old car to the new. The defendant objected to the introduction of evidence tending to show a parol agreement, on the familiar principle that parol evidence is not admissible to vary the terms of a written agreement, and that W. M. Bott & Company were not so authorized to bind the company. After the jury returned their verdict, a motion was made to set it aside, for the reasons stated and because the evidence fails to establish the alleged agreement.

Several errors are assigned, but, in our view, it is only necessary to determine whether the evidence warranted the jury in finding that the oral agreement alleged was, in fact, made.

In considering the case, we will assume that W. M. Bott & Company, general agents of the defendant in Norfolk and vicinity, were authorized, temporarily, at least, to bind the defendant by an oral agreement. There was no privity of contract between the plaintiff and the defendant. If the plaintiff is entitled to recover at all he must prove the existence of a valid, subsisting accident insurance contract between Louis Corleto and the defendant, and that the car involved in the accident resulting in injury to him was covered by this policy. This was the substance of his pleading, and he must stand or fall on that allegation.

The only evidence introduced tending to prove any such contract is the testimony of two witnesses, Louis Corleto and George C. Cohen. The former stated that on August 2, 1929, "I called Mr. W. M. Bott & Company and a man answered the phone and I told him who I was and what I wanted to do, that I wanted to have the policy transferred, and he said: 'Wait a minute, just a minute,' and he put a girl on the phone and I told the girl who I was, give her my name, and told her I wanted the car to be covered, and she told me the car would be covered. That is all."

Objection was made to the introduction of this evidence on the ground that there was no identification of the voice, or otherwise, of the speaker at the other end of the line. The courts are not in accord on the admissibility of such evidence. Canada and some ten or more of the States, including New York and Massachusetts, require identification of the speaker, by voice or otherwise, before the evidence is admitted. See *Dorchester Trust Co.* v. *Casey* (Mass.), 167 N. E. 915, and note, 71 A. L. R. 1; *General Cheese Co.* v. *Moore Bros. Co.* (Sup.), 180 N. Y. Supp. 481; *Lockshin* v. *Canadian N. R. Co.*, 30 Manitoba L. R. 24, 47 D. L. R. 516.

The general rule, and the one supported by the better reasoned cases, is tersely stated by Judge Woods in *Gilliland & Gaffney* v. *Southern Ry. Co.*, 85 S. C. 26, 67 S. E. 20, 24, 27 L. R. A. (N. S.) 1106, 137 Am. St. Rep. 861, thus:

"Those who install telephones in their places of business in connection with a telephone exchange, and use them for business purposes, impliedly invite the business world to use that means of communicating with them with respect to the business there carried on; and the presumption is that they authorize communications made over the telephone in ordinary business transactions."

The testimony shows that this telephonic communication was made through the telephone maintained by W. M. Bott & Company at their place of business, hence identification of the person answering was unnecessary for the admissibility of the evidence.

It was also proven that in Norfolk and vicinity it was the custom of agents engaged in writing accident insurance, when informed by a policyholder that he had traded his car for another and desired a transfer of the policy but did not know the engine number of the new car, to obtain the number of the new car from the dealer. Immediately upon obtaining this information the agent would make a memorandum in the form of a binder covering the new car and later prepare a written rider cancelling the coverage on the old car and substituting therefor the new. This rider would be either mailed or carried to the customer to be attached to the policy.

Louis Corleto on August 2, 1929, did not know the engine number of his new car, and hence does not claim to have given this information to anyone in the agent's office. The promise made by some unidentified woman in the office of W. M. Bott & Company, upon which plaintiff relies to establish the oral contract, was that "the car would be covered." The intention of the unidentified woman, gathered from her language and the custom established, would seem to be that the substitution would be made in the future. The promise, then, is an executory contract to make the substitution at a later time, and before this substitution could be made it was essential that W. M. Bott, or the unidentified person talking, should have the engine number of the new car; this number was not obtained until after the accident.

A parol contract of insurance, to be valid, must show an intention of the parties to make such a contract effective *in praesenti*. In other words, such a contract must not be executory. *Hartford Fire Insurance Co.* v. *Whitman*, 75 Ohio St. 312, 79 N. E. 459, 9 Ann Cas. 218; 32 C. J. 1115; *Quinn-Shepherdson Co.* v. *U. S. Fidelity, etc., Co.*, 142 Minn. 428, 172 N. W. 693; 14 R. C. L. 882.

It is not necessary to decide whether an insurance agent, on receiving a partial description of a new car, has authority to make a temporary binder, to become permanent when the engine number is obtained and the written substitution

executed. The allegation here is that permanent insurance had become effective.

The defendant introduced W. M. Bott and the seven persons employed by the agency at the time the alleged telephonic communication was claimed to have been made, all of whom denied receiving any such message. Their testimony is not that they do not remember any such message, but each states that no such message was received by him or her.

Judge Woods further stated in *Gilliland & Gaffney* v. *Southern Ry. Co., supra,* that the reason for the rule above stated regarding telephonic communications "* * * is the same as that for the presumption that a business letter, properly directed, and sent by mail, reaches the business office of the addressee, and is opened by him or his authorized agent. The presumption that the person who answers is authorized to speak may be very slight, or strong, according to the circumstances, but the statements of such persons should be admitted in evidence as *prima facie* the statements of one having authority to speak."

There is a difference, however, between a telephonic communication and the mailing of a letter. In the latter case, a letter, properly addressed and stamped, is entrusted by the sender to an agency selected by him to make the delivery, and while it is unusual for such letters to go astray, all that the sender can know is that he entrusted the letter to the postal authorities for delivery, and whether it was delivered or not he has no means of knowing. When one person calls another on a business matter over a business telephone, he uses the instrumentality which the business man has invited him to use, and although he may not be able to identify the voice answering the 'phone, he knows that the message is delivered to some person, and the majority of the courts, knowing that a great many business communications are so made, indulge in two presumptions in order to supply the missing link. One is that the person answering

is in the place of business called; the other is that such person is authorized to speak for the party called.

The first presumption is based on the common knowledge that telephone connections are frequently made accurately; the other is based on the business man's invitation to the public to deal with him by this means and the necessity for having in his place of business a person authorized to receive such messages. Usually there are corroborating circumstances which strengthen the presumption. In this case the only corroboration of the fact that telephonic communication was had is the testimony of George C. Cohen, who said that on one occasion, either the last of July or the first of August, 1929, Louis Corleto used his telephone, that he heard the conversation at that end of the line and the substance of it was "an insurance policy connected with an automobile which he had just bought, and it was with reference to transferring a policy."

Louis Corleto testified that he obtained W. M. Botts & Company's telephone number from the telephone directory and dialed the number found there. George C. Cohen, who is blind, testified that he heard Corleto call "Information" and ask for W. M. Botts & Company's telephone number and later dial some number. The necessity for using two means to obtain the desired information does not appear.

On the other hand, the statements and actions of Louis Corleto, as detailed below, are inconsistent with the existence of the alleged parol agreement. Reed, an employee of W. M. Bott & Company, stated that Louis Corleto told him "he had had an accident with his automobile, but it was not the car we had insured," and asked if the policy would cover the new car, and when Louis Corleto signed the written report of the accident the old car was described as the one involved. He attempted to explain this fact by stating that he had signed a blank form which was subsequently filled in by some employee of W. M. Bott & Company. Corleto, during both interviews with Reed, knew that he was talking to an agent of the insurance company and if he relied on a

verbal agreement to transfer the policy from one car to another it is incredible that he should not have mentioned that fact on these occasions. Reed, on this point, testified:

"Q. He didn't say anything to you at that time about ever requesting anybody previously to transfer it, did he?

"A. No. He knew the car had not been transferred.

"Q. And he didn't say anything about having asked anybody to transfer it?

"A. No."

This testimony is undenied and stands in the record as an established fact.

The defendant employed W. Shepherd Drewry to make an investigation of the accident. During the course of this investigation he ascertained that the car involved in the wreck was not the one described in the insurance policy. Shortly thereafter he had an interview with Frank Corleto, whom he told that the car in the wreck was not covered by the insurance policy. Frank Corleto then asked him to change the report which Louis Corleto had made so that it would show the new car was involved in the accident, and upon Drewry's refusal to make any change in that report Frank Corleto asked him to report that the car involved in the accident was the same car described in the insurance policy, which was likewise refused.

Nothing was said on this occosion about any request having been made to transfer the policy from one car to another. If any request had been made it seems reasonable that the company should have been informed of this fact upon this occasion, but it was not until later, and then in the presence of Baum, the plaintiff here, that the witness was informed by Frank Corleto that he and his brother claimed the agent had been requested by phone to make the substitution. The accident occurred just ten days after Louis Corleto traded cars, but some time elapsed after the defendant had informed Louis and Frank Corleto that the insurance policy did not cover the new car before they contended that the agent had been requested to substitute one

car for the other in the policy. No attempt was made to explain their failure to state to the agent and investigators at the time the accident was being investigated the reason for claiming the policy covered the new car.

The admissibility of evidence is a legal question and one to be determined by the court; when admitted, its weight is usually for the jury to determine. The sufficiency of the evidence to support the allegation is also a question to be determined by the court. Here we have a positive affirmation that Louis Corleto dialed the phone number of W. M. Bott & Company; that an unidentified person answered the phone and a contract was entered into. On the other hand, we have a positive denial that any such telephone communication was received, plus the acts and undenied statements of the party calling which are entirely inconsistent with the result he now claims he obtained by use of the telephone.

Under the circumstances the question is, shall the court permit a mere presumption to overcome such positive testimony? In *Rives* v. *Gooch,* 157 Va. 661, 162 S. E. 184, 186, the following excerpt was made from the opinion of Mr. Justice Field in *Lincoln* v. *French,* 105 U. S. 614, 617, 26 L. Ed. 1189: "Presumptions are indulged to supply the place of facts; they are never allowed against ascértained and established facts. When these appear, presumptions disappear."

The plaintiff relies upon the case of *Kiviniemi* v. *Hildenbrand,* 201 Wis. 619, 231 N. W. 252, 255. In that case Hildenbrand telephoned the company's agent and requested that a truck he had just bought be included in an accident insurance policy which he already had on other trucks, and was informed that the matter would be attended to. Several months thereafter the truck was involved in an accident and an action at law followed. Hildenbrand contended that the telephonic communication with the agent's office constituted an oral agreement to extend the policy so as to include the coverage on the new truck. The person who usually at-

tended to answering such telephone calls testified that she did not recollect the transaction and found no record thereof which customarily would have been made. The court said: "It is a close question whether the truck involved in the collision was insured," and refused to set aside the verdict which had been approved by the trial court.

As pointed out above, the testimony in this case is not that the employees of the agent did not recollect any such conversation, but that they were positive no such conversation ever took place.

In *Hammond Lumber Co.* v. *Weeks,* 105 Cal. App. 315, 287 Pac. 573, 574, this is said: "No authority is cited, nor has a careful search disclosed one, tending to approve a rule that one may, upon no evidence other than a telephonic conversation with an unidentified party and uncorroborated as to believed identity, legally sustain grounds for estoppel or release from liability."

In *Theisen* v. *Detroit Taxicab & Transfer Co.,* 200 Mich. 136, 166 N. W. 901, 904, L. R. A. 1918D, 715, it is said: "* * * where both parties are subscribers to the same telephone exchange, and one party, using the telephone directory to ascertain the number of the other party, calls for such other party, and is connected by central with such other party, and a conversation ensues in which the party called responds and informs the party calling that he is the party called, upon proof of such facts, a rebuttable presumption or inference arises sufficient to make a *prima facie* case of identity." See, also, annotation to *Dorchester Trust Co.* v. *Casey, supra.*

Applying these rules, we are of opinion that the evidence is insufficient to sustain the verdict, hence it will be set aside and judgment reversed.

*Reversed and judgment rendered*
*for plaintiff in error.*