COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Frank, Humphreys and Kelsey
Argued at Richmond, Virginia


ORTHOPAEDIC AND SPINE CENTER

OPINION BY
v.      Record No. 1434-12-2      JUDGE ROBERT J. HUMPHREYS
FEBRUARY 19, 2013

MULLER MARTINI MANUFACTURING CORP. AND
  WAUSAU BUSINESS INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Mark C. Shuford (Kaufman & Canoles, P.C. on briefs), for
appellant.

Katharina K. Alcorn (Angela F. Gibbs; Midkiff, Muncie & Ross,
P.C., on brief), for appellees.


Orthopaedic and Spine Center[1] ("OSC") appeals from the July 26, 2012 decision of the

Workers' Compensation Commission ("commission") denying OSC's request for reimbursement

from Muller Martini Manufacturing Corp. ("Muller Martini Manufacturing") and Wausau

Business Insurance Company ("Wausau") (collectively, "appellees").  On appeal, OSC contends

that the commission erred in "adopting the findings of fact and conclusions of law contained in

the Deputy Commissioner's opinion holding that" (1) "Dr. Coleman received Aetna's AWCA[2]

Invitation Letter," (2) "even assuming Dr. Coleman received it, Aetna's AWCA Invitation Letter

was sufficient to enroll Dr. Coleman in AWCA,'" (3) "Dr. Coleman had accepted, acquiesced in,

or waived any right to object to, his inclusion in the Aetna Workers' Comp Access plan," and

---

[1] OSC is also referred to as Orthopaedic Surgery & Sports Medicine Specialists of
Hampton Roads.

[2] AWCA stands for Aetna Workers' Compensation Access.  AWCA is a specialty
network within Aetna Health, Inc. that provides insurance for workers' compensation based
claims.

(4) "Wausau was entitled to apply reductions to the charges submitted by Dr. Coleman based upon his purported participation in the AWCA plan and program." For the reasons that follow, we reverse.

## I. Background

Garry Messer ("Messer"), an employee for Muller Martini Manufacturing, suffered a compensable injury while working on February 2, 2007. On February 22, 2008, the commission awarded him weekly compensation in addition to lifetime medical benefits related to the injury. Messer received treatment from Dr. Martin R. Coleman ("Dr. Coleman") at OSC for his injuries.

Prior to Messer's contact with OSC, Dr. Coleman had entered into a Specialist Physician Agreement (the "SPA") with Aetna Health, Inc. ("Aetna") on September 29, 2003. Under the terms of the SPA, Dr. Coleman agreed to become a participating provider, which required him to provide certain health care services to individuals covered by Aetna plans in exchange for reimbursement from Aetna. Under the terms of the SPA, Aetna reserved "the right to introduce and designate [Dr. Coleman]'s participation in new Plans, Specialty Programs and products during the term of [the SPA]" as long as Aetna provided Dr. Coleman with "written notice of such new Plans, Specialty Programs and products and the associated compensation." The contract then mandates that "[f]or those programs and products which are not health benefit products (e.g. worker's compensation or auto insurance), [Dr. Coleman] shall have thirty (30) days from receipt of the aforementioned notice from [Aetna] to notify [Aetna] in writing if [Dr. Coleman] elects not to participate in such product(s)." The agreement goes on to require that Dr. Coleman "shall accept compensation in accordance with [the SPA] for the provision of any Covered Services to Members under a Plan, Specialty Program or product in which [Dr. Coleman] has agreed to participate hereunder."

In a different section of the SPA, the agreement sets forth what constitutes adequate notice. Specifically, it states that "[u]nless otherwise specified herein, any notice required to be given pursuant to the terms and provisions hereof shall be effective only if given in writing and sent by overnight delivery service with proof of receipt, or by certified mail return receipt requested." The SPA also includes several miscellaneous terms relevant to this appeal, including provisions governing amendments to the agreement[3] and waivers of any breaches or violations of the agreement.[4]

According to Jacqueline Dupuis ("Dupuis"),[5] a Senior Project Manager with AWCA, AWCA sent Dr. Coleman a letter ("invitation letter") in December 2005 "designating him as a Participating Provider in AWCA with an option to opt out if he chose not to participate" pursuant to the SPA. Dupuis did not indicate whether AWCA sent the invitation letter using overnight delivery service with proof of receipt or by certified mail return receipt requested as required under the SPA. AWCA did not receive an opt-out notice from Dr. Coleman in response to the

---

[3] This provision reads.

> This [SPA] constitutes the entire understanding of the Parties hereto and no changes, amendments or alterations shall be effective unless signed by both Parties, except as expressly provided herein. Notwithstanding the foregoing, at [Aetna]'s discretion, [Aetna] may amend [the SPA] upon written notice by letter, newsletter, electronic mail or other media, to [Dr. Coleman] to comply with applicable law or regulation, or any order or directive of any governmental agency.

[4] This provision reads

> The waiver by either Party of a breach or violation of any provision of this [SPA] shall not operate as or be construed to be a waiver of any subsequent breach thereof. To be effective, all waivers must be in writing and signed by an authorized officer of the Party to be charged. [Dr. Coleman] waives any claims or cause of action for fraud in the inducement or execution related hereto.

[5] Dupuis's testimony was submitted to the commission in the form of a sworn affidavit.

invitation letter, and thus, according to Dupuis, he became a Participating Provider in the AWCA network effective April 1, 2006.

Dr. Coleman rendered services on March 14, 2007 and May 24, 2007 in relation to Messer's injury. OSC then sought reimbursement for the services from Muller Martini Manufacturing's insurance carrier, Wausau, in the amount of $13,131. Wausau, however, only reimbursed OSC a total of $1,288 by way of an April 10, 2007 check for $548 and a July 16, 2007 check for $740. Both checks' stubs contain an explanation of benefits which state that the paid amount was "reviewed in accordance with your contract with Aetna Worker's [sic] Comp Access, LLC."

On September 21, 2011, OSC filed a claim with the Workers' Compensation Commission seeking payment for the remainder of Messer's medical bills. In a February 17, 2012 opinion, the deputy commissioner denied OSC's claim. The deputy commissioner relied on the mailing presumption to conclude that OSC "received the notice within a reasonable time after December 2005, and that the Aetna agreement was modified to include the AWCA plan whether or not the notice was sent by overnight delivery or certified mail." The deputy commissioner recognized that the "agreement provides that any notices must be sent by overnight delivery or by certified mail" and that "the employer has presented no evidence that it complied with these provisions." However, he went on to conclude that it was of no consequence:

> In the present matter, whether or not the non-conforming notice would be effective by itself is of little moment. In the present matter, we have ample evidence of acceptance, acquiescence, and/or waiver. Specifically, the explanation of benefits furnished by [Wausau] when it made its initial payment to the medical provider specifically states that, "this bill was reviewed in accordance with your Aetna Workers' Comp Access, LLC." [OSC] accepted this payment, and failed to file the present claim until more than four years thereafter. Under these circumstances, we find that the medical provider's silence and acceptance of

payment is sufficient to evidence its acceptance of the proposal to modify the contract to include workers' compensation.

OSC subsequently requested review from the full commission.

In a July 26, 2012 opinion, the full commission affirmed the deputy commissioner's decision. In its opinion, the full commission found that "evidence in the case, specifically the Affidavit of Ms. Dupuis, sufficiently established that the letter was sent to Dr. Coleman. We further note, as did the Deputy Commissioner, that Dr. Coleman never denied receiving the letter, and that, in fact, Dr. Coleman failed to introduce any evidence on the issue." The commission went on to "adopt the findings of fact and rulings of law contained" in the deputy commissioner's February 17, 2012 opinion. Following the full commission's decision, OSC noted this appeal.

## II. Analysis

We start our analysis by addressing OSC's second and third assignments of error together.[6] That is, we begin by determining whether the invitation letter was sufficient to enroll Dr. Coleman in AWCA, and if not, whether Dr. Coleman waived his right to object to his inclusion in the AWCA plan.

"The interpretation of a contract presents a question of law subject to de novo review." PBM Nutritionals, LLC v. Lexington Ins. Co., 283 Va. 624, 633, 724 S.E.2d 707, 712-13 (2012). "'[O]n appeal [this Court is not] bound by the trial court's interpretation of the contract provision at issue; rather, [this Court has] an equal opportunity to consider the words of the contract within

---

[6] Because of our ultimate holding in this case, it is irrelevant whether Dr. Coleman received the invitation letter, and thus, the principles of appellate review dictate that we must not address OSC's first assignment of error on appeal. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) ("[A]n appellate court decides cases 'on the best and narrowest ground available.'" (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))). Likewise, we do not address OSC's final assignment of error.

the four corners of the instrument itself.'"  Id. (alterations in original) (quoting Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)).

Basic contract interpretation principles dictate that "'[w]hen the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.'"  Envtl. Staffing Acquisition Corp. v. B & R Constr. Mgmt., 283 Va. 787, 793, 725 S.E.2d 550, 554 (2012) (quoting PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358, 626 S.E.2d 369, 372-73 (2006)).  Likewise, the "'[w]ords that the parties used are normally given their usual, ordinary, and popular meaning,'" and "'[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.'"  Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 284 Va. 382, 392, 732 S.E.2d 676, 681 (2012) (quoting D.C. McClain, Inc. v. Arlington Cnty., 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995);  D.C. McClain, 249 Va. at 135-36, 452 S.E.2d at 662).

Under the SPA, Aetna reserved "the right to introduce and designate [Dr. Coleman]'s participation in new Plans, Specialty Programs and products during the term of" the SPA, so long as Aetna provided Dr. Coleman "with written notice of such new Plans, Specialty Programs and products and the associated compensation."[7]  Thus, it is clear that, given proper notice, Aetna had the power to enroll Dr. Coleman in the AWCA plan.  However, proper notice of enrollment was not given in this case.  Under the terms of the SPA, Aetna was specifically required to provide notice in writing and sent by overnight delivery service with proof of receipt or by certified mail return receipt requested.  The appellees failed to present any evidence whatsoever that the invitation letter was sent using either of these methods.  Thus, it is clear that

---

[7] Furthermore, the SPA allows Aetna to "sell, lease, transfer or otherwise convey to payers . . . the benefits of [the SPA] . . . ."

the notice provision was not satisfied, and Dr. Coleman never became a participating member in the AWCA plan under the plain terms of the contract.

However, this does not end our analysis, because the commission found that there was "ample evidence of acceptance, acquiescence, and/or waiver." Furthermore, the commission found "that the medical provider's silence and acceptance of payment is sufficient to evidence its acceptance of the proposal to modify the contract to include workers' compensation."

At the trial or adjudicatory hearing level, the "'burden rests on the party relying on a waiver . . . to prove the essentials of such waiver . . . by clear, precise and unequivocal evidence.'" Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983) (quoting Utica Mutual v. National Indemnity, 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970)). "[P]roof of waiver is a question for the trier of fact." Management Enterprises, Inc. v. Thorncroft Co., 243 Va. 469, 474, 416 S.E.2d 229, 232 (1992). We are bound by the factual findings of the commission,

> [h]owever, such findings of fact are "conclusive and binding" only to the extent that they are "predicated upon evidence introduced or appearing in the proceedings." In other words, "[i]f . . . there is no credible evidence on which the Commission's findings of fact are based, its findings [of fact] are not binding and the question presented becomes one of law."

Uninsured Employer's Fund v. Gabriel, 272 Va. 659, 664, 636 S.E.2d 408, 411 (2006) (second and third alterations in original) (quoting Vanzant v. Southern Bending Co., 143 Va. 244, 246, 129 S.E. 268, 268 (1925); Great Atlantic & Pacific Tea Co. v. Robertson, 218 Va. 1051, 1053, 243 S.E.2d 234, 235 (1978)).

"[W]aiver is an intentional relinquishment of a known right. 'In waiver, both knowledge of the facts basic to the exercise of the right and the intent to relinquish that right are essential elements.'" Stanley's Cafeteria, 226 Va. at 74, 306 S.E.2d at 873 (quoting Employers Ins. Co. v. Great American, 214 Va. 410, 412-13, 200 S.E.2d 560, 562 (1973)). In this case, we need not

- 7 -

even determine whether Dr. Coleman intentionally relinquished his right to proper notice. The SPA specifically states "all waivers must be in writing and signed by an authorized officer of the Party to be charged." Appellees never introduced any writing purporting to be a waiver at the hearing before the commission. Instead, appellees introduced two check stubs stating that the payment was "reviewed in accordance with [Dr. Coleman's] contract with Aetna Worker's [sic] Comp Access, LLC." This is clearly not sufficient to constitute a waiver under the SPA as it is not signed by an authorized officer of OSC. The fact that OSC accepted the two checks from Wausau is of no consequence, as the terms of the contract were not met.

Furthermore, there is insufficient evidence to support the commission's finding that the SPA was modified with Dr. Coleman's concurrence. "'A contract in writing, but not required to be so by the statute of frauds, may be dissolved or varied by a new oral contract, which may or may not adopt as part of its terms some or all of the provisions of the original written contract . . . .'" Reid v. Boyle, 259 Va. 356, 369-70, 527 S.E.2d 137, 144-45 (2000) (quoting Zurich General Accident & Liability Ins. Co. v. Baum, 159 Va. 404, 409, 165 S.E. 518, 519 (1932)). However, as with waiver, a "modification of a contract must be shown by 'clear, unequivocal and convincing evidence, direct or implied.'" Id. at 370, 527 S.E.2d at 145 (quoting Stanley's Cafeteria, 226 Va. at 73, 306 S.E.2d at 873). "In certain circumstances written contracts, even those that contain prohibitions against unwritten modifications, may be modified by parol agreement." Lindsay v. McEnearney Assocs., 260 Va. 48, 53, 531 S.E.2d 573, 576 (2000), see also Reid, 259 Va. at 369-70, 527 S.E.2d at 144-45 ("'Nor does it make any difference that the original written contract provided that it should not be substantially varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by a sufficient consideration is by necessary implication a rescission to that extent.'" (quoting Zurich, 159 Va. at 409, 165 S.E. at 519)).

The SPA contains an amendment provision which states that it "constitutes the entire understanding of the Parties hereto and no changes, amendments or alterations shall be effective unless signed by both Parties, except as expressly provided herein." While Virginia law dictates that such a provision does not prohibit an unwritten modification of the contract, there is not "clear, unequivocal and convincing evidence, direct or implied" in the record to show that there was such a modification in this case. The commission relied solely upon OSC's silence and acceptance of Wausau's checks to find the modification. "[S]tanding alone, an obligee's acceptance of less than full performance by the obligor does not prove intent to relinquish the right to enforce full performance." Stanley's Cafeteria, 226 Va. at 74, 306 S.E.2d at 873 (citing Employers Ins. Co., 214 Va. at 412-13, 200 S.E.2d at 562). As this was the only evidence relied upon by the commission, it is insufficient as a matter of law to support its judgment. Therefore, we reverse the judgment below and remand to the commission with direction that it enter judgment consistent with this opinion.

Reversed and remanded.