COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Frank, Huff and Senior Judge Coleman
Argued at Richmond, Virginia


RESTON SURGERY CENTER

OPINION BY
v.        Record No. 0022-13-2                      JUDGE GLEN A. HUFF
NOVEMBER 19, 2013

CITY OF ALEXANDRIA AND PMA
 MANAGEMENT CORP.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

W. Edgar Spivey (Mark C. Shuford; Kaufman & Canoles, P.C., on
briefs), for appellant.

Katharina Kreye Alcorn (Angela F. Gibbs; Midkiff, Muncie &
Ross, P.C., on brief), for appellees.


Reston Surgery Center ("appellant"), a medical provider, appeals the decision of the

Virginia Workers' Compensation Commission ("commission") denying a claim for full

reimbursement from the City of Alexandria ("employer") and PMA Management Corp.

("PMA") (collectively "appellee") for medical treatment rendered to David Woodson, a police

officer with employer, pursuant to a workers' compensation claim.  On appeal, appellant

contends that the commission erred as follows:

1)  in concluding that there was sufficient evidence to support the
deputy commissioner's finding that appellant had been properly
enrolled as a participating provider in the Aetna Workers'
Compensation Access ("AWCA") program;

2)  in affirming the findings of fact and conclusions of law
regarding notice and waiver contained in the deputy
commissioner's opinion, and in holding that appellant had
accepted, acquiesced in, or waived any right to object to, its
inclusion in the AWCA program; and

3) in affirming the findings of fact and conclusions of law contained in the deputy commissioner's opinion as to whether PMA or employer were intended third-party beneficiaries of any agreement between appellant and Aetna, such that they would be entitled to apply reductions to the charges submitted by appellant.

For the following reasons, this Court reverses the decision of the commission and remands the case to the commission to enter judgment consistent with this holding.

## I. BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (en banc) (citing Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003); Tomes v. James City (County of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002)). So viewed, the evidence is as follows.

On July 6, 2011, appellant provided medical treatment to David Woodson ("Woodson"), a police officer with employer, for a compensable injury sustained during his employment. When the injury occurred, employer was self-insured for its workers' compensation coverage and used a third-party administrator, PMA, to administer its workers' compensation claims. After providing the necessary treatment, appellant sent a medical bill to employer in the amount of $27,937. Employer paid only $5,687.25 of the bill, stating that it had applied reductions to appellant's charges pursuant to a contract between appellant and healthcare network company AWCA.[1] The purpose of the contract was to allow workers' compensation claimants to access a broad range of providers to obtain medical care at a reduced rate.

---

[1] In its brief, appellee defined AWCA as:

> an Aetna affiliate that, since 2003, has been providing workers' compensation carriers, third-party administrators, and self-insured

- 2 -

On November 14, 2011, appellant applied for a hearing, seeking full reimbursement for its charges. Appellant asserted that it had never entered into a contract with AWCA or any Aetna affiliate to provide workers' compensation care at a reduced rate. In response, appellee referenced a Facilities Service Agreement ("FSA") that appellant had entered into with Aetna Health, Inc. ("Aetna"). Section 2.5 of the FSA stated the following, in pertinent part, with regard to the introduction of new programs:

> Facility [Reston Surgery Center] agrees to participate in the Plans and other health benefit products listed on the Product Participation Schedule attached hereto and made a part hereof. Company reserves the right to introduce and designate Facility's participation in new Plans, Specialty Programs and products during the term of this Agreement and will provide Facility with written notice of such new Plans, Specialty Programs and products and the associated compensation.
>
> Nothing herein shall require that Company identify, designate or include Facility as a preferred participant in any specific Plan, Specialty Program or product; provided, however, Facility shall accept compensation in accordance with this Agreement for the provision of any Covered Services to Members under a Plan, Specialty Program or product in which Facility has agreed to participate hereunder.
>
> Company may sell, lease, transfer or otherwise convey to payers (other than Plan Sponsors) which do not compete with Company's product offerings (e.g. workers' compensation or automobile insurers) in the geographic area where Facility provides Covered Services, the benefits of this Agreement, including, without limitation, the Services and Compensation Schedule attached

> employers with access to an Aetna network of physicians, hospitals, and other clinicians, including their contracted rates, for services provided to injured workers. AWCA services the workers' compensation program by processing bills against provider contracts, making pricing recommendations, credentialing providers, assisting with dispute resolution between payers and medical providers, reconsiderations, providing online tools, identifying customers by state, including Coventry and its sub-clients, and producing introduction packages to the [p]articipating [p]roviders.

hereto, under the terms and conditions which will be communicated to Facility in each such case. For those programs and products which are not health benefit products (e.g. worker's [sic] compensation or auto insurance), Facility shall have thirty (30) days from receipt of the aforementioned notice from Company to notify Company in writing if Facility elects not to participate in such product(s).

Section 9.1 of the FSA, governing amendments to the contract, stated as follows:

This Agreement constitutes the entire understanding of the Parties hereto and no changes, amendments or alterations shall be effective unless signed by both Parties, except as expressly provided herein. Notwithstanding the foregoing, at Company's discretion, Company may amend this Agreement upon written notice, by letter, newsletter, electronic mail or other media, to Facility to comply with applicable law or regulation, or any order or directive of any governmental agency.

Section 9.2 of the FSA, governing waivers, stated as follows:

The waiver by either Party of a breach or violation of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach thereof. To be effective, all waivers must be in writing and signed by an authorized officer of the Party to be charged. Facility waives any claims or cause of action for fraud in the inducement or execution related hereto.

Appellee argued that Section 2.5 allowed Aetna to introduce new programs and notify appellant of the opportunity to join such programs. To that end, appellee stated that Aetna had sent appellant an invitation letter in May of 2005 in which Aetna introduced the new AWCA program. The invitation letter informed appellant that it would automatically become enrolled as a participating provider in the AWCA program unless appellant opted out of the program by June 30, 2005. The letter was addressed to appellant's treatment center in Reston, Virginia, and contained the salutation "Dear Executive." According to appellee, the invitation letter was sufficient to notify appellant of its inclusion in the AWCA program, and appellant's lack of response to the invitation letter indicated that it assented to becoming a participating provider.

Appellant countered that the invitation letter was inadequate to notify appellant of enrollment in the AWCA program. Specifically, appellant referenced Section 9.8 of the FSA governing notices, which stated the following in pertinent part:

> Unless otherwise specified herein, any notice required to be given pursuant to the terms and provisions hereof shall be effective only if given in writing and sent by overnight delivery service with proof of receipt, or by certified mail return receipt requested. Notices shall be sent to the following addresses (which may be changed by giving notice in conformity with this Section 9.8).

Appellant then had handwritten the following address in the space provided:

> Managed Care
> HCA Central Atlantic Division[2]
> 7300 Beaufort Springs Drive, Suite 101
> Richmond, VA 23225-5551

Relying on the notice provision, appellant argued that Aetna had incorrectly sent the invitation letter to the address of its treatment center in Reston instead of HCA's Central Atlantic Division address in Richmond. Appellant also argued that the invitation letter was not addressed to the attention of "Managed Care," but rather contained the generic salutation "Dear Executive." Furthermore, appellant argued that appellee had not proved the invitation letter was sent either by overnight delivery service with proof of receipt or by certified mail return receipt requested. Even further, appellant argued that the letter was insufficient in that it did not establish "compensation[,] . . . an essential contract term."

In support of its contention, appellant referred to the affidavit of Barbara Sciro ("Sciro"), an Aetna representative. Sciro, when asked how appellant was notified of its enrollment in the AWCA program, confirmed that an invitation letter and a thank-you letter were both sent. Sciro stated that the invitation letter was part of a mail merge sent to various companies. She further

---

[2] Hospital Care Association ("HCA") was the healthcare organization of which appellant was an affiliate.

stated that the thank-you letter was an "education[al] letter" and was not meant to serve as notice of appellant's enrollment as a provider in the AWCA program.

Appellee argued that, regardless of the invitation letter's compliance with the notice provisions of the FSA, AWCA had sent a thank-you letter on December 15, 2008 that was sufficient to notify appellant of its enrollment. The thank-you letter provided details about the terms of enrollment, reimbursement rates, and the entities that were able to access the FSA, as well as informed appellant how to opt out of participating in the AWCA program. The thank-you letter was addressed to appellant's treatment center in Reston once again, and contained the salutation "Dear Reston Surgery Center L.P. – Hca Affiliate." It appeared to have been sent by one of the two requested methods of mail delivery in the FSA.

Citing additional support for its argument that appellant had notice of its enrollment, appellee referred to the 773 Explanations of Review ("EOR") and Explanations of Benefits that appellant had received since 2005. Appellee argued that each of those documents explained that "any reduction is in accordance with discounts provided by Aetna workers' compensation access," and provided a telephone contact number whereby appellant could follow up on any questions pertaining to bills. Thus, appellee indicated that appellant was continually reminded of its participation. Moreover, appellee stated that appellant had in fact followed up on payment questions over the years but had never contradicted the validity of the reduction rates pursuant to the AWCA. A corollary issue arose as to whether appellee was entitled to enforce the FSA. Appellant argued that appellee was not an intended beneficiary of the agreement between appellant and Aetna. Specifically, appellant maintained that it initially had contracted only with Aetna and argued its relationship to appellee was too attenuated. The evidence established that the relationship was as follows: PMA was a subsidiary of Pennsylvania Manufacturers' Association Insurance Company, which contracted with Healthcare COMPARE Corp.

("COMPARE") in order to access COMPARE's network of healthcare providers. COMPARE subsequently assumed the name First Health Network ("First Health," a/k/a FOCUS). As a result, PMA obtained access to the medical providers associated with First Health. First Health later contracted with AWCA to obtain access to AWCA's network of providers.

In a March 6, 2012 opinion, the deputy commissioner held that the actions taken by Aetna were sufficient to notify appellant of its enrollment as a participating provider in the AWCA program. In particular, the deputy commissioner noted that appellant did not deny receiving either the invitation letter or the thank-you letter. Despite whether the letters complied with the notice provisions of the FSA, the deputy commissioner found that "the employer presented evidence that the medical provider had been paid based upon the AWCA modification in numerous instances without protest or complaint," and thus found "persuasive proof of acquiescence through this course of dealing." Next addressing the compliance of the letters with the notice provision, the deputy commissioner found that "[a]ssuming, arguendo, that the first letter was insufficient, the second letter appears to constitute a sufficient notification to the medical provider. Moreover, both of these letters appear to sufficiently set forth the 'compensation.'" The deputy commissioner further noted that the invitation letter referenced an amendment which discussed compensation under the AWCA program.[3]

The deputy commissioner also found that appellee was an intended beneficiary of the FSA, stating the following:

---

[3] The amendment stated that reimbursement rates under the AWCA program would be the lesser of:

> a) the current PPO Compensation Schedule; b) Virginia's
> maximum mandated workers['] compensation fee schedule; or
> c) billed charges.

[I]n the present matter, we must look to the manifest intent of the parties' agreement. We first note that even if we accept the medical provider's argument regarding Aetna's responsibility to notify it of the "terms and conditions[]" of any transfer of the benefits of the contract, those terms and conditions are sufficiently set forth in the two letters. The first letter references a web site containing detailed information, per Sciro's deposition testimony. The second letter, and its attachment, similarly contains detailed information. Significantly, this second letter specifically states that AWCA makes its "network available to these other entities . . . ." "These other entities" is a reference to, not only, "workers' compensation insurers, [and] third-party administrators," but also "bill review companies and provider network organizations." Thus, it is clear that the parties contemplated that the benefits of the contract could be assigned to or funneled through entities such as FOCUS, and that there need not be a direct agreement between Aetna and the employer or carrier.

In a December 20, 2012 opinion, the commission affirmed the holding of the deputy commissioner. Specifically, the commission noted that appellant did not object to its enrollment in the AWCA program, but rather accepted payments pursuant to such program on a continual basis. On that basis, the commission found that appellant "acquiesced to the provisions, including that the third[-]party administrator was an intended beneficiary of the medical provider's agreement with Aetna." This appeal followed.

II. ANALYSIS

A. Proper Enrollment

On appeal, appellant first contends that the commission erred in concluding that there was sufficient evidence to support the deputy commissioner's finding that appellant had been properly enrolled as a participating provider in the AWCA program. Specifically, appellant points to appellee's failure to comply with the notice provisions of the FSA in informing appellant of the introduction of new programs. In response, appellee asserts the notice provided was adequate to comply with the FSA, and alternately relies on its argument under the second

assignment of error that appellant waived its right to receive notice in accordance with the terms of the FSA.

"'The interpretation of a contract presents a question of law subject to *de novo* review.'" Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp., 61 Va. App. 482, 490, 737 S.E.2d 544, 547 (2013) (quoting PBM Nutritionals, LLC v. Lexington Ins. Co., 283 Va. 624, 633, 724 S.E.2d 707, 712-13 (2012)). "'[O]n appeal [this Court is not] bound by the [commission]'s interpretation of the contract provision at issue; rather, [this Court has] an equal opportunity to consider the words of the contract within the four corners of the instrument itself.'" Id. (first, second, and fourth alterations in original) (quoting PBM Nutritionals, 283 Va. at 633, 724 S.E.2d at 712-13).

"Basic contract interpretation principles dictate that '[w]hen the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.'" Id. at 490, 737 S.E.2d at 548 (alteration in original) (quoting Envtl. Staffing Acquisition Corp. v. B & R Constr. Mgmt., 283 Va. 787, 793, 725 S.E.2d 550, 554 (2012)). Under this principle, the "'[w]ords that the parties used are normally given their usual, ordinary, and popular meaning,' and '[n]o words or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it . . . .'" Id. at 491, 737 S.E.2d at 548 (alterations in original) (quoting Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 284 Va. 382, 392, 732 S.E.2d 676, 681 (2012)). Moreover, "'there is a presumption that the parties have not used words needlessly.'" Id. (quoting Preferred Sys. Solutions, 284 Va. at 392, 732 S.E.2d at 681).

Pursuant to Section 2.5 of the FSA, Aetna was permitted to introduce "new Plans, Specialty Programs and products" throughout the duration of the contract relationship. A notice provision contained in Section 9.8 of the FSA, however, required Aetna to notify appellant in writing if it planned to introduce a new program and give appellant thirty days to opt out of

participating in the program. The notice provision necessitated that Aetna send such communications either by overnight delivery service with proof of receipt or by certified mail with return receipt requested. The notice provision also required that Aetna mail any communications to an address specifically provided by appellant in the FSA. As appellant was an affiliate of HCA, it requested in the FSA that all communications regarding new programs be addressed to HCA's Central Atlantic Division located in Richmond. Appellant had its individual office in Reston.

In the present case, two separate letters served as the basis for appellee's claim that appellant received proper notice of its enrollment as a participating provider in the AWCA program: the invitation letter and the thank-you letter. Appellee, however, failed to introduce evidence that either letter complied with the express notice provision of the FSA. The parties do not know how the invitation letter was sent, and there is no documentation in the record showing proof of receipt. The invitation letter was mailed to appellant's individual office in Reston as opposed to HCA's Central Atlantic Division in Richmond, where the FSA required communications be sent. Furthermore, the invitation letter was addressed, "Dear Executive," as opposed to the required recipient, "Managed Care."

The thank-you letter suffered from similar defects. Although the record shows that Aetna sent the thank-you letter by certified mail with return receipt requested, it likewise shows that the thank-you letter was sent to the same incorrect address in Reston.[4] Like the invitation letter, the thank-you letter also was not addressed to "Managed Care." Thus, we can infer that both letters were received by a treatment center that lacked the institutional knowledge to respond to such an

---

[4] Appellee asserts that appellant did not raise this point below, and thus has not preserved the argument for appeal. Appellee's Br. at 16. We note, however, that this argument is merely a subset of the issue of inadequate notice, which appellant did preserve in its request for review.

invitation, rather than the managed care section of HCA that specifically handled matters pertaining to the managed care network.

Appellant also notes that while the thank-you letter was not intended to serve as notice of appellant's enrollment in the AWCA program, appellee now asserts that the thank-you letter covers any deficiencies in notice that occurred by way of the invitation letter. In rebutting this point, appellant points first to its argument, as discussed above, that Aetna failed to comply with the notice provision for the thank-you letter as well as for the invitation letter. Second, appellant asserts that the purpose of the thank-you letter was not to inform appellant of its automatic enrollment in the AWCA program. The letter stated, "Thanks for treating injured workers[.] We appreciate your being part of the Aetna Workers' Comp Access (AWCA) network." Thus, appellant indicates that the thank-you letter is misleading because it never extended an invitation for appellant to join the AWCA program, but rather presumed that appellant had already joined.[5]

This Court agrees, noting that the thank-you letter did not constitute proper notice of appellant's enrollment in the AWCA program. As appellant stated in its opening brief, "the purpose of the two communications is completely different." While the invitation letter informed appellant of its selection for participation in the program and provided details about the program, the thank-you letter merely served as an "education[al] mailing." It did not include the 30-day opt-out clause, proscribed in the FSA , but instead listed an email and phone number by which the recipient could contact Aetna if it "wishe[d] to terminate . . . participation in the AWCA network."

_____

[5] Appellant further argues that Aetna's own representative, Sciro, testified that the thank-you letter was not intended to serve as notice. We do not assign great weight to this evidence, however, as Sciro also testified that she believed the initial invitation letter served as proper notice of enrollment. Relying on such belief, Sciro testified that the thank-you letter did not constitute notice because notice had already been given.

Based on the foregoing, appellee failed to prove that appellant was properly enrolled as a participating provider in the AWCA program. The plain language of the contract required Aetna to take specific steps to notify Managed Care at HCA of appellant's participation in new network plans, and Aetna failed to comply with those terms. Rather, notification was sent to an incorrect address and sent by a mail delivery method which was contrary to the plain meaning of the FSA's terms. This Court has interpreted similarly the identical terms of Aetna's contract in Orthopaedic & Spine Ctr. and the commission has applied that interpretation in recent rulings under identical facts.[6] Thus, this Court holds that the commission erred in concluding that there was sufficient evidence to support the deputy commissioner's finding that appellant had been properly enrolled as a participating provider in the AWCA program.

## B. Waiver

Appellant also contends that the commission erred in affirming the findings of fact and conclusions of law regarding notice and waiver contained in the deputy commissioner's opinion, and in holding that appellant had accepted, acquiesced in, or waived any right to object to, its inclusion in the AWCA program. Specifically, appellant argues that none of its actions evidenced an intent to waive the notice terms of the FSA. In response, appellee asserts that appellant modified the terms of the FSA through a series of communications spanning a number of years, all in which appellant failed to indicate its wish for strict adherence to the notice provision.

---

[6] Relying on Orthopaedic & Spine Ctr., the commission released two opinions on July 1, 2013, finding the identical May 2005 invitation letter, December 15, 2005 thank-you letter, and 773 explanations of benefits of reimbursements sent between 2005 and 2012, as noncompliant with the requisite contractual language and insufficient evidence of waiver. See Shade v. City of Alexandria, No. JCNVA 00000239966, 2013 VA Wrk. Comp. LEXIS 566; Sandra Kay Hein v. City of Alexandria, No. JCNVA 00000455911, 2013 VA Wrk. Comp. LEXIS 563.

"At the trial or adjudicatory hearing level, the 'burden rests on the party relying on a waiver . . . to prove the essentials of such waiver . . . by clear, precise and unequivocal evidence.'" Orthopaedic & Spine Ctr., 61 Va. App. at 492, 737 S.E.2d at 548 (quoting Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983)). "'[P]roof of waiver is a question for the trier of fact.'" Id. (alteration in original) (quoting Management Enterprises, Inc. v. Thorncroft Co., 243 Va. 469, 474, 416 S.E.2d 229, 232 (1992)). While this Court is "bound by the factual findings of the commission,"

> "such findings of fact are conclusive and binding only to the extent
> that they are predicated upon evidence introduced or appearing in
> the proceedings. In other words, [i]f . . . there is no credible
> evidence on which the Commission's findings of fact are based, its
> findings [of fact] are not binding and the question presented
> becomes one of law."

Id. (alterations in original) (quoting Uninsured Employer's Fund v. Gabriel, 272 Va. 659, 664, 636 S.E.2d 408, 411 (2006)).

"'[W]aiver is an intentional relinquishment of a known right. In waiver, both knowledge of the facts basic to the exercise of the right and the intent to relinquish that right are essential elements.'" Id. (alteration in original) (quoting Stanley's Cafeteria, 226 Va. at 74, 306 S.E.2d at 873). In the present case, we can reasonably infer that appellant did not intentionally relinquish its right to receive notice of enrollment in new plans because the FSA contained a provision pertaining to waiver. Section 9.2 stated that "[t]he waiver by either Party of a breach or violation of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach thereof." It also stated that "[t]o be effective, all waivers must be in writing and signed by an authorized officer of the Party to be charged." In addition, Section 9.1 of the FSA stated that "[t]his Agreement constitutes the entire understanding of the Parties hereto and no changes, amendments or alterations shall be effective unless signed by both Parties, except as expressly provided herein."

The record, however, does not contain any written waivers signed by the authorized officer of appellant allowing for notice to be given by any other method than that stated in the FSA. Nor do the parties suggest that such an express waiver occurred in keeping with the plain language of the FSA. Rather, appellee, relying on common law contract principles, asserts that appellant acquiesced to a modification of the FSA through its course of dealing with Aetna, and thus waived its contractual right to enforce the notice provision.

Accordingly, we address whether to apply these contract principles despite the plain language of the FSA requiring amendments to be in writing. "'A contract in writing, but not required to be so by the statute of frauds, may be dissolved or varied by a new oral contract, which may or may not adopt as part of its terms some or all of the provisions of the original written contract . . . .'" Orthopaedic & Spine Ctr., 61 Va. App. at 493, 737 S.E.2d at 549 (quoting Reid v. Boyle, 259 Va. 356, 369-70, 527 S.E.2d 137, 144-45 (2000)). "[A]s with waiver, a 'modification of a contract must be shown by clear, unequivocal and convincing evidence, direct or implied.'" Id. (quoting Reid, 259 Va. at 370, 527 S.E.2d at 145).

"'In certain circumstances written contracts, even those that contain prohibitions against unwritten modifications, may be modified by parol agreement.'" Id. (quoting Lindsay v. McEnearney Assocs., 260 Va. 48, 53, 531 S.E.2d 573, 576 (2000)). In such cases, it is of no moment "that the original written contract provided that it should not be substantially varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by a sufficient consideration . . . ." Zurich General Accident & Liability Ins. Co. v. Baum, 159 Va. 404, 409, 165 S.E. 518, 519 (1932); see Gov't Employees Ins. Co. v. Hall, 260 Va. 349, 356, 533 S.E.2d 615, 618 (2000) (noting that "'a course of dealing by contracting parties, considered in light of all the

circumstances, may evince mutual intent to modify the terms in their contract'" (quoting

Stanley's Cafeteria, 226 Va. at 73, 306 S.E.2d at 873)).

Applying these contract principles to the present case, this Court holds that appellee nonetheless failed to prove by clear and unequivocal evidence that appellant impliedly modified the FSA to 1) allow notice of enrollment to be sent to its treatment center in Reston, instead of sending such notices to the Managed Care office of HCA, and 2) allowing notice to be sent by any means of mail delivery service. Appellee points to the 773 EOR letters that were sent to appellant's office in Reston since its automatic enrollment in the AWCA program, asserting each EOR letter contained language explaining that the reimbursement rates were reduced pursuant to the AWCA program. Appellee argues that, as a result, appellant had 773 reminders of its participation in the AWCA program and could have opted out at any time. Appellee further asserts that not only did appellant fail to opt out, but also that appellant corresponded with Aetna regarding some of the reimbursement rates and in doing so acknowledged that it was a participating provider in the AWCA program.[7]

Despite this course of conduct, appellant never acquiesced to Aetna's noncompliance with the notice provisions because the party that was authorized to accept enrollment on behalf of appellant was not contacted at any point. In considering the entire organization of HCA and its subsidiary, appellant, we can reasonably infer that the person receiving EOR letters at appellant's treatment center in Reston was different than the person handling managed care communications at HCA's centralized division in Richmond. This fact amplified the need to

---

[7] In support of its contention, appellee references an ARTS database that contains records of appellant's communications with Aetna about reimbursement rates under the AWCA program.

- 15 -

have communications regarding enrollment sent to the correct party and address, particularly where affirmative action was required in order to opt out.

Addressing a similar set of circumstances in Orthopaedic & Spine Ctr., this Court held that the medical provider's "silence and acceptance of . . . checks" was insufficient to modify the terms of the contract requiring written waivers. 61 Va. App. at 494, 737 S.E.2d at 549 (noting that, "'standing alone, an obligee's acceptance of less than full performance by the obligor does not prove intent to relinquish the right to enforce full performance'" (quoting Stanley's Cafeteria, 226 Va. at 74, 306 S.E.2d at 873)). In Stanley's Cafeteria, the Supreme Court held that no waiver had occurred even where a "lessor accepted smaller monthly payments than those the lessee was obligated by the lease to make" over a span of eighteen years. 226 Va. at 74, 306 S.E.2d at 873.

Based on the foregoing, appellee failed to meet its burden of establishing by clear, unequivocal, and convincing evidence that appellant intended to relinquish its notice rights under the FSA. Appellee also failed to show that an implied modification of the FSA occurred as a result of appellant's receipt of EOR letters that referenced the AWCA reimbursement rates. Thus, this Court holds that the commission erred in affirming the deputy commissioner's findings with regard to waiver, and in holding that appellant accepted, acquiesced in, or waived any right to object to, its inclusion in the AWCA program.

C.  Intended Beneficiary

Lastly, appellant contends that the commission erred in affirming the findings of fact and conclusions of law contained in the deputy commissioner's opinion concluding that appellee was an intended beneficiary of the agreement between appellant and Aetna. Specifically, appellant challenges appellee's entitlement to apply reductions to the medical charges submitted by appellant. In response, appellee asserts that the FSA "did not require a direct contract between

Aetna and PMA" and that privity of contract was established such that appellee was entitled to benefit from the FSA. Because of the aforementioned rulings on waiver and notice, this Court need not reach the question of whether the employer was an intended beneficiary. Therefore, this Court holds that the commission erred in affirming the deputy commissioner's opinion concluding that appellee was an intended beneficiary of the agreement between appellant and Aetna as the issue is rendered moot.

### III. CONCLUSION

For the foregoing reasons, this Court holds that the commission erred in concluding: 1) that appellant was properly enrolled as a participating provider in the AWCA program; 2) that appellant waived its contractual right to enforce the notice provision of the FSA; and 3) that appellee was an intended third-party beneficiary of the FSA entered into between appellant and Aetna. Accordingly, this Court reverses the decision of the commission and remands the case to the commission to enter judgment consistent with this holding.

<u>Reversed and remanded.</u>